SAVAGE *v.* PETERSON DISTRIBUTING
COMPANY, INC.

1. ANIMALS—PRODUCTS LIABILITY—CONTAMINATED FOOD—EVIDENCE.
  Positive direct evidence resulting from an analysis of the alleged
  contaminated food is not a *sine qua non* to the establishment
  of a prima facie case for injuries to animals from alleged
  poisoned or contaminated food, since to require such evidence
  would place an unfair burden on plaintiff in this kind of a
  case.

2. SAME—PRODUCTS  LIABILITY—CONTAMINATED  FOOD—EVIDENCE—
  AUTOPSY.
  Absence of the finding of an alleged contaminant by autopsy
  of dead animals, standing alone, is not conclusive upon the ques-
  tion of the presence of the contaminant in an animal food prod-
  uct alleged to be contaminated.

3. EVIDENCE—CIRCUMSTANTIAL EVIDENCE.
  An issue as to the existence or occurrence of a particular fact,
  condition, or event, may be proved by evidence as to the
  existence or occurrence of similar facts, conditions, or events,
  under the same, or substantially similar, circumstances.

4. ANIMALS—CONTAMINATED FOOD—NEGLIGENCE—EVIDENCE.
  Testimony of 11 mink ranchers which was in substance that each
  of them experienced the same difficulty of their animals sick-
  ening and dying, at the same approximate time as such diffi-
  culty was suffered by plaintiff mink rancher, after they had

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 6–8]  4 Am Jur 2d, Animals § 149; 22 Am Jur, Food § 121;
  46 Am Jur, Sales §§ 819–824, 826.
  Liability of manufacturer or seller for injury caused by animal
  feed or medicines, crop sprays, fertilizers, insecticides, rodenti-
  cides, and similar products. 81 ALR2d 138.
[3]  29 Am Jur 2d, Evidence §§ 264, 265.
[5]  5 Am Jur 2d, Appeal and Error § 886.
[9]  5 Am Jur 2d, Costs §§ 1011, 1012.

fed their animals defendant's cereal mink food *held*, properly admitted to show these facts as some evidence from which the jury might conclude that there was a pattern of causally connected carelessness at defendant's factory in manufacturing various kinds of mink food.

5. APPEAL AND ERROR—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.

The testimonial record is viewed in the light most favorable to the plaintiff on his appeal from order granting defendant's motion for a judgment notwithstanding the verdict.

6. ANIMALS — CONTAMINATED FOOD — PRODUCTS LIABILITY — NEGLIGENCE—EVIDENCE.

Proof of sale of mink food, for the purpose mutually intended by the defendant manufacturer and 11 mink rancher witnesses, coupled with proof of a common, widespread and almost simultaneously damaging aftermath, rendered admissible testimony by the ranchers that each experienced the same difficulty with their animals at the same approximate time as difficulty was suffered by plaintiff mink rancher, and its probative worth for the jury, the foundation for such testimony being laid by the substantially corresponding time of feeding of defendant's mink food and the substantially corresponding effect of such feeding.

7. SAME—CONTAMINATED FOOD—PRODUCTS LIABILITY—NEGLIGENCE—EVIDENCE—REBUTTAL.

Defendant cereal manufacturer, in action against it for damages suffered by feeding of allegedly contaminated mink food produced by it to mink owned by plaintiff, *held*, entitled to introduce testimony that there was a lack of complaints by users of other animal foods produced at the same plant, with the same common ingredients, and at the same relevant times as the mink food in suit, where plaintiff's case was made out largely on circumstantial evidence that many mink ranchers who fed defendant's product suffered the same difficulty as plaintiff, whereas other mink ranchers who did not feed defendant's product did not suffer such difficulty.

8. SAME—PRODUCTS LIABILITY—CONTAMINATED ANIMAL FOOD—EVIDENCE.

Defendant manufacturer of cereal mink food, in action against it by plaintiff mink rancher who alleged that defendant had furnished contaminated food product, *held*, entitled to introduce testimony about mandatory inspections of its human

and animal food factory by federal food and drug administration to show absence of any improper practices during the time period relevant to the action, in case where plaintiff's proofs were largely circumstantial, based on similar difficulties experienced by several mink ranchers who fed defendant's prepared food to their animals at approximately the same time, and the absence of similar difficulties with mink ranchers who did not feed defendant's food.

9. COSTS—NEW TRIAL—EXCLUSION OF TESTIMONY.
   Costs are ordered to abide final result, where new trial is ordered by Supreme Court for reversible error in exclusion of testimony during jury trial.

Appeal from Court of Appeals, Division 3, J. H. Gillis, P. J., T. G. Kavanagh, and Quinn, JJ., reversing Saginaw; Huff (Eugene Snow), J. Submitted December 7, 1966. (Calendar No. 17, Docket No. 51,346.) Decided June 6, 1967. Rehearing denied July 21, 1967.

1 Mich App 548, reversed.

Declaration by Lewis Savage and Theodore Savage, partners doing business as Savage Brothers, against Peterson Distributing Company, Inc., a Michigan corporation, and Ralston Purina Company, a Missouri corporation, for damages arising from the sale of allegedly adulterated animal feed which plaintiffs fed to their mink. Verdict and judgment for plaintiffs. Judgment reversed by Court of Appeals. Plaintiffs appeal. Reversed and remanded for new trial.

*van Benschoten & van Benschoten,* for plaintiffs.

*Cook, Nash, Deibel & Borrelo,* for defendant Ralston Purina Company.

O'HARA, J. The fundamental issue presented by this appeal is what measure of direct proof is nec-

essary to make a submissible case for jury consideration thereby permitting the jury to make inferences from established facts.

The action was originally brought against Peterson Distributing Company, Incorporated, and Ralston Purina Company. Peterson, Inc., is engaged in the business of manufacturing, processing, packaging, and selling a mink food product. Ralston Purina is a manufacturer and supplier of one of the components used by Peterson, Inc., in the processing and manufacture of the finished mink food. Plaintiff-appellant is a copartnership which raises mink for the sale of mink fur and of breeding stock.

In the trial court, judgment was had against both defendants upon a jury verdict. Thereafter, Peterson, Inc., settled with plaintiff. Ralston Purina alone appeals. Motions *non obstante veredicto* and for a new trial were denied by the trial court. The Court of Appeals set aside the verdict and judgment and ordered judgment for the defendant *non obstante veredicto*.

We granted leave in part because certain language in the opinion of the Court óf Appeals might be subject to misconstruction. The language could be considered in conflict with settled law. We quote:

"There was no *analysis* of the food fed to plaintiff's mink and an *autopsy* of several mink carcasses from plaintiff's ranch failed to show any salmonellae." (Emphasis supplied.) 1 Mich App 548, 550.

Whatever the weight of the foregoing may be, we feel compelled to point out that positive direct evidence resulting from an analysis of the alleged contaminated food is not a *sine qua non* to the establishment of a prima facie case of alleged poisoned or contaminated food. So to require is to

place an unfair burden upon a plaintiff in this kind
of case. There are circumstances attending the sale
of allegedly poisoned or contaminated food in which
a complaining plaintiff cannot obtain a scientific
analysis of the involved product. Such plaintiff
should not be totally without a basis of making
out a submissible fact question. Neither is an ab-
sence of the finding of the alleged contaminant by
autopsy, standing alone, conclusive upon the ques-
tion of its presence in the product in question.

In the instant action, plaintiff rested its case
upon a combination of circumstantial and direct
evidence which in totality it claims pointed to the
presence of a contaminant in defendant's cereal
component in the multi-ingredient food. To support
its claim it introduced testimony tending to show
that in a relatively wide geographical area of the
midwest an outbreak of epidemic proportion of
food poisoning occurred among mink raised for
pelting in the year 1961. Among the mink ranches
thus affected was an experimental mink-feeding
ranch owned and operated by an officer of defendant
Peterson, Inc. The cereal additive used in the
product mixed and fed to plaintiff's mink and those
on the experimental ranch was furnished by de-
fendant Ralston Purina Company. Many of the
other ranchers whose mink were involved in the
epidemic used the Ralston cereal. All of the affect-
ed mink exhibited relatively the same symptoms.
An independent research foundation analyzed and
found salmonellae in samples of defendant Purina's
cereal. The same research foundation autopsied
and found in the carcasses of defendant Peterson's
mink the same type "A" salmonellae. A qualified
bacteriologist expressed the opinion that the pres-
ence of the same subclass salmonellae in specific
organs of the autopsied mink and the cereal indi-
cated to him that the mink exhibiting the common

symptoms were victims of salmonellae type "A"
food poisoning. Certain additional admitted testi-
mony tended to show that the mink of some ranch-
ers in the area who did not use defendant Ralston's
cereal did not exhibit the common symptoms.

The foregoing, we believe, is a fair summary of
plaintiff's theory of the case and the proof in sup-
port thereof. In legal essence this is to say that
plaintiff rested its case, in part, on proof of a par-
ticular fact condition, or event, by evidence of the
existence or occurrence of similar facts, conditions,
or events under the same or substantially similar
circumstances. 32 CJS, Evidence, § 584, p 713,
states the general rule as follows:

"An issue as to the existence or occurrence of
particular fact, condition, or event, may be proved
by evidence as to the existence or occurrence of
similar facts, conditions, or events, under the same,
or substantially similar, circumstances."

This principle is not new to our case law. In a
breach of warranty action against the vendor of a
metal silo warranted as rust proof, watertight and
acid resistant, proof of the condition of other silos
was admitted in support of the claim of breach.
We said:[1]

"Exception is taken to the action of the court in
admitting evidence as to the condition of other silos.
Plaintiff was permitted to show that other silos of
the same material shipped with his, and erected in
his neighborhood, had rusted. The proofs showed
that the other silos were of like material. Upon
the issue whether the silo was rust proof, evidence
was received as to the condition of the other silos.
We do not think this was error, inasmuch as the
other silos were shown to be of the same material,
and existing under like conditions. The character

---

[1] McNamara v. E. W. Ross Co., 225 Mich 335, at pp 339, 340.

of the issue as to whether the silo was rust proof, we think, makes it clearly distinguishable from the case of *Second National Bank* v. *Wheeler,* 75 Mich 546, cited by defendant. It is more like the case of *Avery* v. *Burrall,* 118 Mich 672. If the other silos were of the same material, and they rusted, it would certainly be some evidence that the one in question would, and did, rust, as claimed by plaintiff."

In support of its theory plaintiff adduced the following: The animals being raised in early 1961, both at its mink ranch and other mink ranches using any kind of defendant Ralston's mink food, whether mixed or unmixed with other ingredient mink foods, were gravely affected by an epidemic of food poisoning. The cause was narrowed to defendant Peterson's complete mink food known as "Redi-Mix." Defendant Peterson naturally endeavored to search out the difficulty with its ingredient suppliers, and on August 7, 1961, wrote defendant Ralston a letter which fairly sums up the testimony given by David W. Peterson, president both of defendant Peterson Distributing Co. and ultimately discharged defendant Peterson King Co. The letter follows:

"Ralston Purina Company
Checkerboard Square
St. Louis, 2, Mo.
Attn—Dr. Paul Kifer, Director of Research
        Mr. A. H. Leonard, Sales Manager,
            Mink Feed Division

*Gentlemen:*
"I presume you have received the sample of Purina Developer Chow forwarded to you by the Borden Company. We are very pleased that there was a sufficient amount left in the sample for this purpose.

"As described to you on the telephone, starting with the report of Roy Bohn on June 12 and during

our subsequent telephone conversations, the difficulties encountered might be summarized as follows: After we started feeding Purina Breeder Chow and changing to Developer at the appropriate time over 75% of our Redi-Mix customers seemed to have had serious difficulties. Most of them reported the kits to be unthrifty, rough furred, reduced rate of growth and having rectal prolapses in many kits and swollen vulva in some female kits. Adult nursing females have been lost and now male and female kits are dying from bladder infections and stones.

"At the beginning and during the progress of this difficulty we were inclined to blame the weather, bad management, an epidemic or disease of some kind. However the symptoms that finally seemed to be common to most feeders resembled that found in mink which had been fed stilbestrol. Testing of products for stilbestrol by an independent laboratory, Rosner Hixon, resulted in negative findings on poultry being used but positive findings on your cereal which we are using, sample of which has been forwarded to you.[2]

"As mentioned on the telephone, we have restricted our discussion of this problem with you and other people to telephone conversations, but are sending you this written description of the difficulty by Dr. Kifer's request.

> Yours very truly,
> PETERSON KING CO.
> (signed: D. W. PETERSON)
> D. W. Peterson, president"

Mr. Peterson testified fully during the trial. His testimony alone, if believed by the jury, was sufficient to prove the presence of some lethal contaminant in defendant Ralston's mink food products as manufactured at the time in Ralston's Davenport plant and to link actionably such products—through

---

[2] It is fair to say that the results of a subsequent biological test, if believed by the jury as against the Hixon test mentioned in this letter, disclosed an absence of stilbestrol in the same "cereal."

defendant Peterson's admixture thereof in its "Redi-Mix"—with the ailments and deaths of plaintiff's mink. As to this proof, favorable view suggests a permissible inference that the facts thus brought forth amounted to something more than a series of disconnected and purely coincidental occurrences. The common time, source and effect elements brought them together with evidentiary significance.

"We examine the case, of course, upon view of the testimonial record in that light which is most favorable to the plaintiff. Defendant, by its presently tested motion for judgment notwithstanding the jury's verdict, has for the purposes of such motion stipulated all that the plaintiff may rightfully claim from the adduced proof." *Barnebee* v. *Spence Brothers,* 367 Mich 46, 48.

Applying the foregoing test, we are constrained to disagree with the Court of Appeals.

Since this opinion stands for reversal of the judgment of the Court of Appeals, it is necessary to consider defendant Ralston's counterstated questions 2, 3 and 4.

Counterstated question 2, eliminating the argumentative part thereof, inquires whether the trial judge erred prejudicially in admitting the testimony of the aforesaid other mink ranchers (some 11 in all), the substance of which was that each experienced the same difficulty at the same approximate time as suffered by plaintiff after having fed their animals defendant Ralston's cereal mink food; a cereal not directly identified by any of such witnesses with defendant Ralston's "Mink Breeder Chow SF." It was "Mink Breeder Chow SF" only, according to defendant Ralston, which was furnished by it to defendant Peterson.

In view of the common nature of the trouble these mink ranchers experienced after having fed

Ralston mink food in the forepart of 1961, we find
no evidentiary error here. It was proper to show
these circumstantial facts as some evidence from
which the jury might conclude that there was a
pattern of causally connected carelessness at Ral-
ston's Davenport plant in manufacturing, for the
market at the particular time, Ralston's various
types of mink food.

The proof of sale of such food, for the purpose
mutually intended by the defendant manufacturer
and the respective rancher-witnesses, coupled with
proof of a common, widespread, and almost simul-
taneously damaging aftermath, rendered it admis-
sible and its probative worth was for the jury.
The foundation for its introduction was laid by the
substantially corresponding time of feeding of de-
fendant Ralston's mink food and the substantially
corresponding effect of such feeding.

Defendant Ralston's remaining questions 3 and 4
are as follows:

"3.

"Was it prejudicial error to exclude appellee's
offered testimony relative to lack of complaints by
users of its Laboratory Chows produced at the same
plant, with the same common ingredients and at
the same relevant times as the Mink Breeder Chow
SF involved in this case?"

"4.

"Was it prejudicial error to exclude testimony of
mandatory Federal Food and Drug Administration
inspections of appellee's human and animal food
plant to show absence of any improper practices
during time period relevant to law suit?"

Defendant Ralston would have us answer these
questions in the affirmative. We agree. When a

product liability cause is presented which depends for connecting links on circumstances presented as here, the defendant has a like right to depend in rebuttal upon opposing circumstances of relevance such as questions 3 and 4 suggest.

In summary, on due favorable view there is evidence here which, as between plaintiff and defendant Ralston, points to a specific theory of causation which indicates a logical sequence of cause and effect. As against this the defendant Ralston suggests no opposing theory of cause and effect. Only the old Scottish verdict, "Not proven, M'Lord," is urged upon us. In the exhaustive evidentiary circumstances disclosed by this record the trial judge ruled properly that such a verdict should not be instructed, and later, that defendant Ralston was not entitled to judgment contrary to the jury's verdict.

We reverse and remand for retrial, leaving the matter of costs to abide the final result.

DETHMERS, C. J., and KELLY, BLACK, SOURIS, and ADAMS, JJ., concurred.

T. M. KAVANAGH, J., did not sit.

BRENNAN, J., did not participate in the decision of this case.