KEEFER v C R BARD, INC

Docket No. 51633. Submitted April 13, 1981, at Lansing.—Decided October 20, 1981.

Susan Keefer brought an action for damages against C. R. Bard, Inc., resulting from breach of a warranty of an inside needle catheter and against Caro Community Hospital and Loretta Hoose, a hospital nurse, resulting from negligence in the use of the catheter. Following trial, a jury returned verdicts of no cause of action against defendants hospital and Hoose and found Bard liable to the plaintiff for her damages, Tuscola Circuit Court, Patrick R. Joslyn, J. Bard appeals. *Held:*

1. The trial court did not abuse its discretion in granting the plaintiff's motion *in limine* to prohibit reference to her marital status at the time of the accident and her subsequent decision to offer her newborn twins for adoption. The record reveals that admission of the evidence very likely would have diverted the jury's attention from the crucial issues of the case and would have substantially prejudiced the plaintiff.

2. The trial court properly allowed the plaintiff's expert witness to give opinion testimony relative to the catheter and

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 797, 801.

[2] 5 Am Jur 2d, Appeal and Error § 843.

31 Am Jur 2d, Expert and Opinion Evidence §§ 25, 31.

[3] 31 Am Jur 2d, Expert and Opinion Evidence § 31.

[4] 31 Am Jur 2d, Expert and Opinion Evidence § 36.

[5] 29 Am Jur 2d, Evidence §§ 249, 251, 252.

[6] 29 Am Jur 2d, Evidence §§ 336, 337.

[7] 75 Am Jur 2d, Trial §§ 91, 121.

Prejudicial effect of trial judge's remarks, during civil jury trial, disparaging the litigants, the witnesses, or the subject matter of the litigation. 83 ALR2d 1128.

[8] 5 Am Jur 2d, Appeal and Error §§ 809, 884.

81 Am Jur 2d, Witnesses §§ 515, 516.

[9] 81 Am Jur 2d, Witnesses §§ 603, 611.

[10] 5 Am Jur 2d, Appeal and Error § 881.

29 Am Jur 2d, Evidence § 818.

[11] 5 Am Jur 2d, Appeal and Error § 803.

29 Am Jur 2d, Evidence § 316.

the physics and mechanics surrounding its severance and concerning the actions of defendant Hoose at the time of the accident. As the plaintiff's treating physician he was in a position to render an opinion based upon his own medical knowledge relative to negligence in the insertion of the catheter.

3. The trial court properly excluded testimony offered by Bard's expert witness who neither was involved in the plaintiff's treatment nor came into contact with the actual catheter until several years after the accident.

4. The trial court properly permitted a hospital administrator to testify regarding defendant Hoose's competence and work history. Hoose's competence was challenged by Bard, and the evidence was probative of disputed issues in the case. The testimony did not constitute impermissible character evidence, and, in addition, Bard failed to object during trial on that basis, precluding review on appeal.

5. The record reveals that the remarks of the trial court relative to certain demonstration evidence, when considered in context, were not calculated to attempt to disparage and prejudice Bard. In addition, any error was rendered harmless by the trial court's curative instruction.

6. The trial court did not abuse its discretion in allowing the scope of cross-examination of Bard's expert witness to include inquiries regarding other suits involving Bard's catheters. The record reveals that Bard had interjected the issue and that the inquiries were for impeachment purposes.

7. The trial court erred in permitting Bard's expert witness to be impeached by reference to deposition testimony which had been reduced to transcript form. The record reveals that the witness was not given an opportunity to examine the testimony prior to his examination. But the error was harmless beyond a reasonable doubt because the witness was verbally informed of the statement in question prior to impeachment and was given a full and ample opportunity to explain any inconsistency.

8. The trial court properly refused to admit certain demonstration evidence offered by Bard. The record reveals that there was a substantial difference between the circumstances surrounding the accident and the proffered demonstration. In addition, Bard was given an alternative opportunity to demonstrate the "physics" of its defense.

9. The trial court properly excluded evidence relative to the significance of the absence of blood deposits on the catheter

offered by Bard's expert witness. The record reveals that Bard failed to lay a proper foundation for admission of the testimony.

Affirmed.

BASHARA, J., concurred in part and dissented in part. He would agree that reversal is not warranted. But he would hold that the trial court erred in allowing the plaintiff's expert witness to testify relative to the mechanical operation and use of the catheter because he was not qualified to so testify through either personal training or extensive experience. He would also hold that the trial court erred in permitting testimony by the hospital administrator relative to defendant Hoose's general reputation as a nurse because the testimony was not relevant and allowed the jury to draw an improper inference that she had not been negligent in the instance at issue. He would affirm.

### OPINION OF THE COURT

1. EVIDENCE — APPEAL — RELEVANT EVIDENCE.

   A determination by a trial court that the prejudicial effect of certain evidence outweighs its probative value or that the evidence is irrelevant will not be set aside by the Court of Appeals absent an abuse of discretion.

2. EVIDENCE — EXPERT WITNESSES — OPINION TESTIMONY — APPEAL — RULES OF EVIDENCE.

   A trial court in its discretion may admit expert opinion testimony where it determines that the witness is qualified as an expert in his field, there are facts which require an expert's interpretation or analysis, and the witness's knowledge is peculiar to experts rather than to lay persons, and such admission will not be reversed on appeal absent a showing of an abuse of discretion (MRE 702).

3. WITNESSES — EXPERT WITNESSES — COMPETENCE.

   A party offering an expert witness must lay a proper foundation for the admission of the expert's testimony.

4. EVIDENCE — EXPERT WITNESSES — OPINION TESTIMONY — RULES OF EVIDENCE.

   An expert witness may base his opinion testimony on facts or data perceived by or made known to him at or before a hearing (MRE 703).

5. EVIDENCE — RELEVANT EVIDENCE — RULES OF EVIDENCE.

   Evidence is relevant where it has any tendency to make the

existence of any fact that is of consequence to a determination
of an action more or less probable than it would be without the
evidence (MRE 401).

6. EVIDENCE — CHARACTER EVIDENCE — RULES OF EVIDENCE.

Evidence of a person's character is not admissible to prove that
he acted in conformity therewith on a particular occasion;
however, where evidence of a party's competence is probative of
disputed issues, it may be admitted and does not constitute
impermissible character evidence (MRE 404[a]).

7. APPEAL — VERDICTS — JUDICIAL COMMENTS.

The Court of Appeals, in determining whether certain remarks
made during trial by a trial court were improper and prejudi-
cial, will consider the context in which they were made, and a
jury's verdict will not be reversed on the basis of such remarks
where the record reveals that the verdict was the jury's and
not the expressed opinion of the trial court.

8. APPEAL — CROSS-EXAMINATION — JUDICIAL DISCRETION.

The scope of cross-examination is within the discretion of the
trial court, and a decision of the trial court relative to the scope
will not be reversed on appeal absent an abuse of discretion.

9. WITNESSES — IMPEACHMENT OF WITNESSES — PRIOR STATEMENTS —
DEPOSITION TESTIMONY — RULES OF EVIDENCE.

A prior written statement of a witness, including deposition
testimony reduced to transcript form, must be shown to the
witness before an examination of the witness concerning the
statement may be made (MRE 613[a]).

10. EVIDENCE — EXPERIMENTAL EVIDENCE — APPEAL.

A trial court, in its discretion, may determine the admissibility of
evidence of the results of certain experiments, and such deter-
mination will not be reversed on appeal absent an abuse of
discretion.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY BASHARA, J.

11. EVIDENCE — CHARACTER EVIDENCE — APPEAL — COURT RULES.

*Admission of evidence of a party's general reputation of compe-
tency which is not offered in response to a challenge by an
opponent, is not relevant to a controversy, and allows a jury to
draw an inference that the party was not negligent relative to
the alleged act constitutes error; but reversal is not required on
appeal where the record reveals that the verdict would have
been the same regardless of the error (GCR 1963, 529.1).*

*Cicinelli, Mossner, Majoros & Alexander, P.C.* (by *Eugene D. Mossner* and *William A. Pearson),* for plaintiff.

*Keil, Henneke, Ruhala & McKone,* for defendant C. R. Bard, Inc.

Before: BASHARA, P.J., and T. M. BURNS and BEASLEY, JJ.

T. M. BURNS, J. Defendant C. R. Bard, Inc., appeals as of right a March 12, 1980, jury verdict finding it liable to plaintiff for damages of $150,-000. We affirm.

On September 20, 1972, plaintiff, who was about to give birth, was admitted as a patient to the Caro Community Hospital. As she was being prepared for the delivery room, a catheter was placed in her left arm. After the needle punctured her arm, plaintiff heard the nurse who inserted it say that something had broken off. An unsuccessful attempt to find the severed catheter in plaintiff's arm was made. Following her trip to the delivery room in which she gave birth to twin boys, an X-ray revealed that the broken catheter had lodged in plaintiff's lung. The next day she underwent surgery to remove the catheter.

It was the contention of the defendant hospital during trial that the accident occurred because the catheter needle, which had been purchased from defendant Bard, was defective. Bard, on the other hand, contended throughout the trial that the needle was not defective but that defendant Hoose, the nurse who had inserted it into plaintiff's arm, had not followed the instructions that it had supplied with the needle.

Appellant Bard has briefed a number of issues

for our consideration, none of which requires reversal.

Bard first argues that the trial judge erred in granting a motion *in limine* filed by plaintiff in which she requested that the trial judge prohibit any reference to the fact that she was single at the time of the accident and that immediately thereafter she permitted third parties to adopt the twins to whom she gave birth. Bard complains that plaintiff was permitted to be referred to as Susan Keefer at trial when in fact she was married several weeks before trial to Arnold Rock. Although Bard admits plaintiff's marital status was irrelevant to litigate any damages, it argues that it was "an offense to the integrity of the judicial process" to misrepresent plaintiff's marital status.

The trial judge ruled that any reference to plaintiff's marital status or to the subsequent adoption of her children was irrelevant and that the probative value of this evidence was outweighed by its potential prejudicial effect.

This Court will not reverse a trial judge's determination that the prejudicial effect of evidence outweighs its probative value or his decision that certain proffered evidence is not relevant unless we are convinced that the judge's rulings in these matters amount to an abuse of discretion. See *Aetna Life Ins Co v Brooks,* 96 Mich App 310; 292 NW2d 532 (1980), *Jarecki v Ford Motor Co,* 65 Mich App 78; 237 NW2d 191 (1975). We find no evidence of such an abuse of discretion in this case. Admission of evidence that plaintiff was unmarried and pregnant and evidence that she put her two children up for adoption after their birth very likely would have diverted the jury's attention from the crucial issues of this case and would have substantially prejudiced plaintiff.

We find defendant Bard's reliance on the case of *Wood v Detroit Edison Co,* 409 Mich 279; 294 NW2d 571 (1980), to be misplaced. That case does not support Bard's contention that the trial judge erred in permitting plaintiff to refer to herself as "Susan Keefer". In *Wood,* the Supreme Court addressed the question of whether remarriage of a plaintiff-surviving spouse was admissible evidence in a wrongful death action. The plaintiff in that case sought damages for the loss of society and companionship of her first husband. The trial judge denied a protective order that would have prohibited the mention of plaintiff's remarriage. On appeal, the Supreme Court determined that the plaintiff should be referred to by the name which she regularly used:

"We therefore hold that evidence of a plaintiff surviving spouse's remarriage may not be used to determine damages. If the plaintiff continues to regularly use the name Wood—Ms. or Mrs. Wood—after a remarriage, she is entitled to a protective order prohibiting referring to her or addressing her by the name of her present husband. The defendant's lawyer has not the right to address or refer to her by a name which she does not choose regularly to use. If, however, at the time of trial, she regularly uses her new husband's name, she cannot properly ask the court to require the defendant's lawyer to address or refer to her by a name which she no longer regularly uses. An appropriate limiting instruction may be requested by plaintiff in this regard." *Id.,* 288-289.

The facts of this case are not analogous to those of the *Wood* decision. The present case is not a wrongful death action in which loss of society and companionship are claimed as injuries. Further, as plaintiff points out, there is no proof in this case that she does not continue to refer to herself as

"Susan Keefer". Therefore, we find the argument on this issue to be totally without merit.

Defendant next argues that the trial judge erred in permitting plaintiff's treating physician to testify as an expert concerning the cause of the catheter's severance.

Under the applicable rule of evidence, MRE 702, a trial judge has discretion to admit expert opinion into evidence:

"If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Three factors must be established to the satisfaction of the trial judge before expert opinion is deemed admissible: the witness must be qualified as an expert in his field, there must be facts which require an expert's interpretation or analysis, and the witness's knowledge must be peculiar to experts rather than to lay persons. *Gallagher v Parshall,* 97 Mich App 654, 657; 296 NW2d 132 (1980), *Dep't of Natural Resources v Frostman,* 84 Mich App 503; 269 NW2d 655 (1978).

A trial judge has great discretion in admitting expert testimony in the form of a conclusion, and the judge's exercise of that discretion will not be reversed on appeal absent a showing of a clear abuse of discretion. *Hughes v Allis-Chalmers Corp,* 96 Mich App 175; 292 NW2d 514 (1980), *Johnson v Detroit,* 79 Mich App 295; 261 NW2d 295 (1977). It is the duty of the party offering the expert to lay a proper foundation for the admission of the expert's

testimony. *Siirila v Barrios,* 398 Mich 576; 248 NW2d 171 (1976).

Defendant Bard does not question the qualifications of plaintiff's treating physician, Dr. Seigner, to testify as an expert concerning medical matters. Rather, Bard objects to the doctor's opinion testimony only insofar as it pertains to the catheter device itself and the physics and mechanics surrounding the catheter's severance. Two instances of improper expert testimony are alleged by Bard.

The first of these took place when Dr. Seigner was permitted to read to the jury certain written statements he submitted to Bard concerning this incident. In a letter written to the doctor by Bard, he was requested to answer several questions concerning incidents surrounding the severance of the catheter. Dr. Seigner indicated that he understood one of the questions, "Factors other than the device which may have contributed to the adverse experience?", to ask whether there was any negligence associated with the catheter's insertion that would have led to the accident. He responded to this question, "None to my knowledge." Bard argues that the admission of Dr. Seigner's written response to this question constituted opinion evidence lacking a proper foundation. We disagree.

Dr. Seigner was plaintiff's treating physician and was involved in the search for the catheter after it was severed. His opinion in this instance was linked to his own area of expertise in that it expressed his belief that there was no negligence surrounding the insertion of the catheter. While it is undisputed that some of his knowledge of the facts surrounding the catheter's insertion was obtained from defendant Hoose, MRE 703 permits an expert's opinion to be based upon facts or data perceived by or made known to him at or before

the hearing. Dr. Seigner properly interpreted the thrust of the question in defendant Bard's letter as seeking information regarding medical factors which may have been involved in the accident. Dr. Seigner's uncontroverted expertise and special knowledge concerning plaintiff's medical treatment qualified him to give an opinion on this question.

The second incident in which defendant Bard claims that improper expert opinion testimony was given by Dr. Seigner concerned the physician's opinion that the bent catheter needle used on plaintiff was the cause of the catheter's severance. It was also the opinion of Dr. Seigner that if the needle had not been bent the incident would not have occurred.

Whether or not a bent tip on a catheter needle could cause a catheter to sever is a question which more clearly falls within the physics and mechanics of the device itself. Dr. Seigner testified that he was familiar with how catheters are inserted and that he had been trained in their use. While he admittedly conducted no tests concerning what would cause a catheter to sever, he was generally familiar with how a needle catheter device functions and how it should be installed within the human body. Thus, to the extent that he had general knowledge concerning how catheter needles function and rather specific knowledge of how they are installed in a human body, his opinion testimony could be said to have "assist[ed] the trier of fact to understand the evidence or determine a fact in issue". MRE 702. Therefore, we cannot say that the lower court abused its discretion in admitting this expert testimony.

We similarly reject defendant Bard's argument that the trial judge erred in permitting Dr. Seig-

ner to give opinion testimony concerning the actions of defendant Hoose at the time of the accident. During trial, counsel for defendant Caro Community Hospital and defendant Hoose cross-examined Dr. Seigner concerning his opinion as to whether nurse Hoose had followed the instructions supplied by Bard along with the catheter needle. Counsel for defendant Bard objected to this testimony arguing that there was no basis for it. Citing MRE 703, which permits an expert to base an opinion on matters related to him by other parties, the trial judge overruled defendant Bard's objection and permitted the testimony.

During defendant Bard's case in chief, its expert was asked whether he had an opinion as to whether Hoose followed the directions provided. Counsel for defendants Caro Hospital and Hoose objected on the basis that Bard's expert was not qualified to give such an opinion. The objection was sustained.

Defendant Bard contends that the trial judge's rulings were inconsistent and discriminatory. Bard contends that the testimony of both Dr. Seigner and its expert should have been excluded or that both experts should have been permitted to give their opinions concerning this matter. Our review of the record fails to convince us that the trial judge abused his discretion in this matter.

While both experts were asked essentially the same question, whether in their opinion nurse Hoose followed the instructions supplied with the catheter, the experts were in different positions relative to their special knowledge. Dr. Seigner was plaintiff's treating physician and could render an opinion concerning whether Hoose followed the directions based upon his own medical knowledge concerning plaintiff's treatment, *i.e.,* his ability to

observe the insertion point and the state of plaintiff after the catheter had severed. The expert of defendant Bard, Mr. Child, on the other hand was not involved in plaintiff's treatment in any way and did not come in contact with the actual catheter until several years after the accident.

Thus, while neither expert actually was present when the catheter was severed, the trial judge did not abuse his discretion in distinguishing between these two experts because Dr. Seigner had an opportunity to observe plaintiff within a short time after the catheter severed. Therefore, no error requiring reversal was committed.

Plaintiff called Mr. Robert Korte, the Caro Community Hospital administrator, during trial for purposes of cross-examination. Korte testified that the particular catheter needle used on plaintiff was purchased from the Bard company. During the cross-examination of Korte by defendants Caro Hospital and Hoose, Korte was asked what type of employee he considered Hoose to be. Korte responded that she was very competent. Defendant Bard objected to this testimony on the basis that it had no foundation.

Korte further testified that one of his responsibilities as hospital administrator was to evaluate hospital employees. Any problems or complaints concerning nurse Hoose would have been referred directly to him. Korte indicated that Hoose was so competent that she had been made the supervisor for one of the hospital shifts. After Korte testified that no complaints had been brought to his attention concerning Hoose, counsel for Bard objected on the basis of relevancy. The trial judge overruled Bard's objection and indicated that any problems could be clarified on cross-examination.

Thereafter, counsel for Bard did cross-examine

Korte concerning his knowledge of nurse Hoose's competence. Korte admitted that he had become the hospital administrator only four weeks before plaintiff's accident. Korte's evaluation of Hoose's competence as of September 20, 1972, the date of the incident, was based only upon her personal file and such evaluations as had been prepared by other hospital employees.

Defendant Bard now contends on appeal that Korte's testimony was without foundation, was irrelevant, and was improper character evidence.

With respect to Bard's argument that there was no proper foundation supporting Korte's testimony, we note that Korte testified that he was the hospital administrator and was generally responsible for evaluating the work performance of hospital employees. As a superior of nurse Hoose, Korte was in a position to evaluate her competence. The fact that he had been made the hospital administrator for only four weeks prior to plaintiff's injury is indicative of the relative weight to be given to his testimony.

Nor can we say that this testimony was not relevant. Relevant evidence is any evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". MRE 401. A trial judge's determination that certain evidence is relevant is a matter of discretion and will not be reversed on appeal absent a showing of abuse. *Brooks, supra.*

Defendant Hoose's competence and work history were probative of disputed issues in this case inasmuch as they had bearing on her ability to follow directions concerning installation of the catheter. Because defendant Bard alleged that she

failed to follow the directions supplied with the catheter, the testimony elicited from witness Korte was relevant.

We also reject the argument of defendant Bard that this testimony was impermissible character evidence. While evidence of a person's character is not admissible to prove that he acted in conformity therewith on a particular occasion, MRE 404(a), the testimony in this case did not establish an habitual method of conduct by nurse Hoose. That is, the testimony was not to the effect that Hoose always followed directions, but rather that she was a competent nurse and that no complaint had ever been made against her. Therefore, Korte's testimony was not impermissible character evidence.

We further note an alternative basis for our ruling. Our review of the lower court record reveals that counsel for defendant Bard did not object to Korte's testimony on the basis that it constituted impermissible character evidence. Rather, his objection was limited to challenging the foundation and relevance of this testimony. As a consequence, Bard's challenge to this testimony on the basis that it was impermissible character evidence was not preserved for appellate review. *Marietta v Cliffs Ridge, Inc,* 385 Mich 364; 189 NW2d 208 (1971), *Rottman v Waterford Twp,* 13 Mich App 271; 164 NW2d 409 (1968).

Defendant Bard next argues that the trial judge unduly influenced the jury by stating his opinion as to the reliability of certain demonstrative evidence. We disagree.

During the testimony of defendant Bard's expert, Mr. Child, several demonstrations concerning needle catheters were conducted. One of these demonstrations involved the taking of the catheter

needle which was bent in the same fashion as the one used on plaintiff, threading it with a plastic catheter tube, and then demonstrating the difference between holding the catheter and withdrawing the needle and holding the needle and withdrawing the catheter tube. In the former instance, the catheter tube was not damaged, whereas, in the latter demonstration, the heel of the catheter needle severed the tube.

While these demonstrations were proceeding, the trial judge made several comments which form the basis of this claim. The nature of the trial judge's comments can be aptly illustrated by just one of them:

"I really feel that the degree of reliability that any demonstration of this nature would have in this courtroom would be so insignificant that it has no probative value whatsoever."

In determining whether remarks made by a trial judge during the course of the trial were improper and prejudicial, the context in which the remarks were made must be considered. *Grand Rapids Auctions, Inc v Hartford Accident & Indemnity Co,* 23 Mich App 389; 178 NW2d 812 (1970). This Court will not reverse a jury verdict on account of comments made by a judge during the course of trial where it is apparent from the record that the verdict rendered was that of the jury and not the expressed opinion of the trial judge. *Id.*

The record establishes that defendant Bard offered to have its expert carry on a demonstration concerning a bent catheter needle and some catheter tubing. The trial judge inquired as to what the demonstration purported to show and Bard indicated that it would show "[J]ust the physics of its working". Bard admitted that the demonstration

was not meant to duplicate what actually occurred on September 20, 1972, when plaintiff was injured. Considering Bard's proposed demonstration, the trial judge noted the significant difference between the circumstances surrounding the demonstration and the circumstances present when plaintiff was injured.

There is a substantial difference between circumstances in the courtroom where the demonstration was conducted and the circumstances in the delivery room at the time of plaintiff's accident. In a courtroom, defendant Bard could exercise great control over the demonstration, and, in fact, its expert testified as to performing hundreds of experiments in which certain movements between the needle assembly and a catheter tube result in a severance of the tube. However, all of these experiments were conducted outside of a human body. Therefore, because the circumstances surrounding the courtroom demonstration were far different from those in the hospital at the time of plaintiff's accident, the comments of the trial judge do not appear to be calculated to attempt to disparage and prejudice Bard.

Finally, we note that any error would be harmless inasmuch as the trial judge instructed the jury, "I have not meant to indicate any opinion as to the facts by my rulings, conduct, or remarks during trial. But if you think I have, you should disregard it because you are the sole judges of the facts." Thus, no error has occurred.

We also find to be unpersuasive defendant Bard's argument that the trial judge abused his discretion in permitting this expert to be cross-examined regarding other lawsuits involving catheters manufactured by Bard. During direct examination of its expert, defendant Bard asked him,

"Now from your knowledge has there been any history of finding anything with regard to the beveling on these types of needles after it has gone through this testing procedure and into the market?" Mr. Child, Bard's expert, answered, "No, we've had no reports."

On cross-examination, counsel for Caro Community Hospital and nurse Hoose asked defendant Bard's expert to state the number of times that he had testified for Bard. When the expert was further requested to state whether there had been any complaints against Bard similar to that made by plaintiff, counsel for Bard objected on the basis that the proposed testimony was not relevant. The trial judge overruled Bard's objection on the ground that Bard had been permitted to represent to the jury that there had been no complaints of a general nature against Bard. Cross-examination continued and the expert witness responded that between 20 and 25 complaints similar to plaintiff's had been made concerning the catheter needles. Defendant Bard contends on appeal that this cross-examination was impermissible because it touched upon complaints concerning Bard's products without any showing of substantial similarity to the present case.

The scope of cross-examination is within the discretion of the trial judge. *Brooks, supra.* The judge's decision in the matter will not be reversed on appeal absent an abuse of discretion. *Jarecki, supra.*

Defendant Bard attempts to analogize the instant case to the factual situation of *Royal Mink Ranch v Ralston Purina Co,* 18 Mich App 695; 172 NW2d 43 (1969). In that case, this Court held inadmissible certain testimony that purported to convey an expert witness's personal observations

concerning the facts of an unrelated lawsuit involving mink ranching and allegedly defective feed. However, the case at bar is distinct from *Royal Mink Ranch* because in this case defendant Bard interjected the issue of prior reports or complaints into trial. Consequently, the testimony was elicited to impeach the testimony of defendant Bard's expert that there had been no reports or complaints concerning the bevel or cutting edge of Bard catheter needles. The trial judge specifically permitted the cross-examination as impeachment and not as substantive evidence. In *Royal Mink Ranch*, however, the complained-of testimony was offered as direct evidence and not impeachment. Because we cannot state affirmatively that the trial judge's decision in this matter amounted to an abuse of discretion, we must affirm.

We also find to be unpersuasive defendant Bard's argument that error requiring reversal was committed where the trial judge permitted Bard's expert witness to be cross-examined and impeached by reference to his prior deposition testimony where he was not first shown a copy of his prior testimony.

Under MRE 613(a), a written statement must be first shown to a witness before it can be used as a source of impeachment:

"In examining a witness concerning a prior statement made by the witness, if written the statement must be shown to the witness and if oral, its substance and the time, place, and person to whom the statement was made must be disclosed to the witness, and on request must be shown or disclosed to opposing counsel."

Thus, the question presented is whether the deposition testimony of defendant Bard's expert constituted "a written statement".

The issue before us has not been addressed previously by a Michigan appellate court. However, it appears that the language of this rule of evidence is unambiguous to the extent that it provides that if a prior statement of a witness is written then it must be shown to that witness before impeachment can take place.

Plaintiff's contention that the rule applies only where the statement is written *by* the witness does not appear to be correct. This follows from the opinion of this Court in *People v Johnson,* 100 Mich App 594, 598; 300 NW2d 332 (1980), where this Court held:

> "In construing MRE 613, words are to be given their ordinary meanings. See *Samuel Reiter Painting Co v Bill Miedler Homes, Inc,* 87 Mich App 75; 273 NW2d 592 (1978), *lv den* 406 Mich 911 (1979). We believe that the plain meaning of 'written' in the rule belies any claim that tape recordings should be considered as written statements."

While this issue addressed by the *Johnson* Court is not the same as that before us here, we believe that that Court was correct in stating that the plain language of this rule of evidence must be construed in accordance with this ordinary meaning.

To a similar effect, is the opinion of this Court in *People v Donald,* 103 Mich App 613; 303 NW2d 247 (1981). In that case, this Court refuted a defendant's claim that a witness may be impeached only by written statements and that a tape recorded preliminary examination does not qualify unless transcribed into written form. As with *Johnson,* the *Donald* Court distinguished between tape recordings and "written statements". Significantly, the Court did not distinguish be-

tween all statements written *by* a litigant and all statements given orally by the litigant, some of which may have been reduced to a written form.

Thus, in these two cases, the Court seems to have implicitly understood that if either of the defendants in these two cases had had his preliminary examination testimony reduced to a transcript form, it would have been a "written statement" for purposes of MRE 613(a). Therefore, it follows that the trial judge erred in the instant case by permitting defendant Bard's expert witness to be impeached without first giving him an opportunity to examine his deposition testimony. Nonetheless, we find that error requiring reversal has not occurred.

Even though the trial judge's evidentiary ruling was erroneous, defendant Bard was not prejudiced in such a way as to require a new trial. Mr. Child was told of his prior deposition statement before that statement was used for impeachment. Thus, whatever error occurred arose only from the fact that Bard's expert was orally told of his prior statement rather than being shown it in writing. Further, it is difficult to fathom how the jury's verdict has been affected significantly by the erroneous evidentiary ruling. It is extremely unlikely that the verdict would have been different if plaintiff's counsel would have shown Mr. Child his deposition testimony before using it to impeach him. Mr. Child was given a full and ample opportunity to explain any inconsistency. Therefore, we hold that the complained-of error is harmless beyond a reasonable doubt and does not warrant reversal.

During his direct examination, defendant's expert offered to perform a demonstration before the jury using a catheter needle manufactured by

Bard in a section of clear plastic tubing. This demonstration purportedly would have shown how the catheter could be inserted inside the tubing, allowing the jury to visualize the process. Plaintiff's counsel requested an opportunity to conduct a voir dire examination of Mr. Child with regard to the demonstration. During voir dire, Child indicated that the purpose of the plastic tubing in the demonstration was to represent a human vein. Counsel for Bard specifically stated that the demonstration was not intended to duplicate the exact circumstances surrounding plaintiff's accident; rather, it was offered to show the angle and physics surrounding catheter insertions. However, while defendant Bard's attorney argued that the demonstration was not intended to duplicate plaintiff's accident, he nonetheless indicated that he intended the demonstration to show that the accident could not have happened in the way described by defendant Hoose. The trial judge disallowed defendant's proposed demonstration on the ground that the circumstances surrounding it did not have sufficient similarity to the circumstances surrounding plaintiff's accident.

The admissibility of evidence during trial of results obtained in experiments is a matter that is entrusted to the sound discretion of the trial judge whose decision in the matter will not be reversed on appeal unless an abuse of discretion is shown. *Pohlod v General Motors Corp,* 40 Mich App 583; 199 NW2d 277 (1972). Our examination of the lower court record convinces us that the trial judge's decision in this matter cannot be said to have constituted an abuse of discretion.

Defendant Bard argues that the demonstration should have been permitted because it was not intended to duplicate the plaintiff's accident. Para-

doxically, this defendant admits that the purpose of the demonstration was to show that the accident could not have happened in the way described by defendant Hoose. We cannot resolve these conflicting positions because, in effect, defendant Bard is attempting to prove facts surrounding the occurrence of the accident through a courtroom experiment. In order for the results of such an experiment to be admissible, the circumstances surrounding it and the circumstances surrounding the plaintiff's accident must be substantially similar.

It is clear that there was a substantial difference between the circumstances surrounding plaintiff's accident and defendant's proposed demonstration. There is a vast difference between the characteristics of a human vein and the characteristics of clear plastic tubing. To the extent that defendant's proffered experiment attempted to show what actually happened during plaintiff's accident by showing that it did not occur in the way indicated by defendant Hoose, the trial judge did not abuse his discretion in refusing to permit defendant to carry on this experiment.

We further note that defendant Bard subsequently was permitted to demonstrate in front of the jury the physical principles of the catheter needle which Bard contends made it impossible to sever the catheter tube unless the tube was pulled back through the needle structure. The only significant difference between the experiment permitted by the trial judge and the experiment disallowed was the presence of the clear plastic tubing purporting to represent a human vein. Thus, it cannot be said that the trial judge abused his discretion by determining that defendant could demonstrate the "physics" of its defense without recourse to the clear plastic tubing.

The final issue raised by defendant in this appeal concerns whether the trial judge abused his discretion in refusing to permit defendant Bard's expert to give his opinion concerning the absence of the catheter's component parts and the absence of blood on the catheter's interior surface. We find no error.

During his direct examination, Bard's expert witness was asked the significance of the fact that there appeared to be no blood deposits in the catheter tube. He was later asked if there was any significance to the fact that certain component parts of the catheter needle, the stylet and control plug, were absent. Objections were made to both of these questions, and the trial judge subsequently ruled that the questions were improper. The trial judge excluded Mr. Child's testimony as to the absence of both blood deposits and the catheter needle's component parts on the basis that there was no foundation for this testimony and on the basis that Bard's expert was not qualified to testify concerning these matters.

With respect to a lack of proper foundation for this testimony, the record establishes that defendant's own offer of proof indicated that the proper foundation could not be established. The catheter needle used on plaintiff apparently was turned over to the hospital administrator and stored in his desk drawer for approximately three years.

As to the absence of any blood deposits in the catheter tube, the record establishes that the catheter needle was examined by several different people during the preparation of this lawsuit. Further, during trial it was examined by several witnesses and handled by trial counsel. The record indicates that before the catheter needle and tube used on plaintiff were admitted into evidence, they

were, in fact, separated by applying warm water to them. Therefore, in light of these facts, there simply was no proper foundation for suggesting that the absence of blood deposits could be probative of how the accident took place. There were too many extraneous factors which could have affected the catheter needle's condition.

Nor can we say that the trial judge erred in ruling that Mr. Child was not qualified to testify as to the absence of blood; there is no evidence qualifying defendant's expert as capable of recognizing or identifying blood.

With respect to the missing parts of the catheter, the absence of testimony that the catheter needle was not disturbed or materially changed during a long period of time which preceded trial gives rise to a defect in the foundation for Mr. Child's testimony. Only through pure speculation could one conclude from the absence of component parts of the catheter needle during trial that these parts were missing on account of some action by defendant Hoose at the time of plaintiff's injury. Indeed, a great many other explanations for the absence of these parts could be postulated.

Having examined all issues raised by defendant Bard in this appeal and finding that none of them gives rise to error requiring reversal, we affirm the verdict of the lower court.

Affirmed.

BEASLEY, J., concurred.

BASHARA, P.J. *(concurring in part and dissenting in part).* I agree with the majority opinion that reversal is not required. However, I write separately because I find error in two rulings of the trial court.

First, Dr. Seigner's qualification as an expert in the mechanical operation and use of catheters was erroneous. Dr. Seigner testified that insertion of catheters was a nursing function. There is no evidence that Dr. Seigner possessed the necessary learning, knowledge, skill or practical knowledge that would allow him to testify as to what generally causes a severed catheter. *Siirila v Barrios,* 398 Mich 576, 591; 248 NW2d 171 (1976). Nor was Dr. Seigner qualified to testify concerning the mechanical functioning of the catheter, there being no evidence that he possessed knowledge in that area either through personal training or extensive experience.

Dr. Seigner was properly allowed to testify concerning the events surrounding the accident of which he was personally aware. However, the court erred in allowing him to speculate as to the cause of the accident, which he did not see, since he was not an expert nor an eyewitness.

I also disagree with the majority's conclusion that the testimony of the hospital administrator, Mr. Korte, was relevant and properly admitted at trial. At issue in this case was whether defendant Hoose was negligent in inserting the catheter into plaintiff's arm. Her general reputation as a nurse was not relevant to the controversy. Furthermore, by allowing Korte to testify that a complaint had not been lodged against Hoose in the nine years of her employment, the trial court allowed the jury to improperly infer that she had not been negligent in this instance. Such an inference is clearly improper. MRE 404(a), *Adams v Elseffer,* 132 Mich 100; 92 NW 772 (1902), *McNabb v Green Real Estate Co,* 62 Mich App 500, 510-512; 233 NW2d 811 (1975). Where the opposing parties did not bring general reputation into issue, it was error to

allow Hoose to bolster her credibility by introducing the testimony of Korte.

Where the Court of Appeals finds that the trial court clearly erred in admitting or excluding evidence, the judgment will not be set aside "unless refusal to take such action appears * * * inconsistent with substantial justice". GCR 1963, 529.1. Upon careful review of all the evidence, it is apparent that the verdict would have been the same regardless of these errors. *Miskiewicz v Smolenski,* 249 Mich 63; 227 NW 789 (1929), *Moskalik v Dunn,* 392 Mich 583; 221 NW2d 313 (1974). Under these circumstances, I concur in the majority holding affirming the judgment.