## COOK v RONTAL

Docket No. 47779. Submitted January 7, 1981, at Detroit.—Decided September 9, 1981. Leave to appeal applied for.

Michael Rontal, M.D., performed a stapedectomy on Anna Cook. Following the surgical procedure, Mrs. Cook suffered a complete loss of hearing in her right ear. Mrs. Cook commenced suit in Wayne Circuit Court alleging that Rontal committed malpractice in failing to adequately advise her of the risks attendant to the surgical procedure for which she had given her consent and for breach of a contract to cure. The jury brought in a verdict of no cause of action in favor of defendant. The trial court, Horace W. Gilmore, J., acting for Margaret G. Schaeffer, J., entered judgment for the defendant. The plaintiff appeals, alleging that the trial court erred in not allowing testimony from another patient of the defendant who had the same surgery and also lost her hearing to the effect that she had not been informed of the risks involved in the surgery. *Held:*

The trial court's ruling that the offered testimony was insufficient to establish the defendant's "habit" of failing to inform patients of the risks of a stapedectomy was not clearly erroneous. The Michigan rule of evidence allowing admission of evidence of other crimes, wrongs, or acts (MRE 404[b]), is only applicable to criminal cases. Further, the defendant's alleged failure to advise a former patient was collateral to the issue in this case and was properly excluded. The trial judge's determination that the proffered testimony would be substantially more prejudicial than probative was not clearly erroneous.

Affirmed.

1. Evidence — Appeal.

Decisions of a trial court concerning the admissibility of evidence

References for Points in Headnotes

[1] 4 Am Jur 2d, Appeal and Error § 493.

5 Am Jur 2d, Appeal and Error § 931.

[2] 29 Am Jur 2d, Evidence §§ 249 *et seq.,* 303, 324.

[3] 29 Am Jur 2d, Evidence § 320 *et seq.*

[4] 81 Am Jur 2d, Witnesses § 524.

[5] 30 Am Jur 2d, Evidence § 1080 *et seq.*

will not be disturbed on appeal unless those decisions are clearly erroneous.

2. EVIDENCE — PRIOR ACTS — HABIT — RULES OF EVIDENCE.

Evidence of prior acts of a person may be admissible as evidence of habit if it establishes a "set pattern" or something that is done routinely or has been performed on countless occasions (MRE 406).

3. EVIDENCE — PRIOR ACTS — RULES OF EVIDENCE.

The Michigan rule of evidence permitting admission of evidence of other crimes, wrongs, or acts of a person is only applicable in criminal cases (MRE 404[b]).

4. WITNESSES — IMPEACHMENT — COLLATERAL MATTERS.

A witness may not be impeached by contradiction on matters which are purely collateral; what is a collateral matter depends upon the issue in the particular case.

5. EVIDENCE — IMPEACHMENT — EXTRINSIC EVIDENCE.

Extrinsic impeachment evidence may have some probative value but the judge must weigh this benefit against countervailing factors such as whether admission of the evidence will result in or cause undue prejudice, confusion, surprise and the like, and whether admission will unduly lengthen the trial.

*Ripple, Chambers & Steiner, P.C.,* for plaintiff.

*Kerr, Russell & Weber* (by *Monte D. Jahnke),* for defendant.

Before: T. M. BURNS, P.J., and R. M. MAHER and D. C. RILEY, JJ.

D. C. RILEY, J. Plaintiff appeals from a judgment entered on a jury verdict of no cause of action in favor of the defendant. Plaintiff's theory at trial was that defendant, a physician specializing in the practice of otolaryngology, committed malpractice by failing to adequately advise her of the risks attendant to a surgical procedure that defendant performed on her and to which she had given her consent. The sole question on appeal concerns the admissibility of the testimony of Theresa Blanchard, a former patient of the defendant.

Plaintiff first visited Dr. Rontal in October, 1972, complaining of hearing difficulty in the right ear. After taking the plaintiff's history and administering various tests, defendant diagnosed plaintiff as suffering from otosclerosis, the hardening of the bones in the inner ear. Plaintiff testified that defendant informed her that this condition could be corrected by a simple surgical procedure known as a stapedectomy, but that defendant did not advise her that a possibility existed that the surgery could result in a hearing loss. By contrast, defendant testified that he discussed the possible risks of the operation with plaintiff not only on her first visit but also on subsequent visits.

The stapedectomy was performed on June 11, 1973, and, as a result, plaintiff suffered a complete loss of hearing in her right ear. Based on these facts, plaintiff averred that she did not give an informed consent to the surgery because she was not fully advised of the risks of a stapedectomy and of the alternatives to surgery. The other count of her complaint alleged that defendant breached a contract to cure because defendant had assured her that the operation would be simple and successful.

Dr. Rontal testified that he fully advised the plaintiff of the risks of, and alternatives to, the surgery. On cross-examination he stated that the standard of practice in his specialty requires him to fully explain such risks and alternatives to all patients, and that he does so in all cases. With respect to stapedectomies, he stated that internationally there exists a two to four percent statistical risk of hearing loss, and that if an individual physician's personal failure rate is higher, the standard of practice requires that the patient be

informed of that fact. He further testified that he informs his patients that his failure rate is just below five percent. The jury was informed that Dr. Rontal had performed six stapedectomies in the service, approximately fourteen more while undertaking his residency and one more while in private practice at the Hauser Clinic. Dr. Rontal conceded that the only other stapedectomy he had performed in private practice had been a failure.[1]

The plaintiff then offered to call to the stand Dr. Rontal's former patient, Mrs. Blanchard, upon whom defendant had performed the unsuccessful stapedectomy six months prior to plaintiff's surgery. Mrs. Blanchard also lost her hearing in the right ear. Mrs. Blanchard would have testified that she had never been advised prior to surgery that an unsuccessful stapedectomy could result in a hearing loss.

Following the trial judge's initial ruling to disallow the proffered testimony, an offer of proof was made, after which the judge reaffirmed her decision to disallow the testimony. The court concluded that neither MRE 406 nor MRE 404(b) permitted the testimony to be admitted as substantive evidence and that permitting the testimony for impeachment purposes would violate the collateral matter rule.

This Court has held that decisions of a trial court concerning the admissibility of evidence will not be disturbed on appeal unless those decisions are clearly erroneous. *People v McKinney*, 88 Mich App 715, 720-721; 278 NW2d 728 (1979). Applying this standard of review, we shall consider, *seriatim*, each of the grounds upon which

---

[1] This was the surgery performed on former patient Blanchard whose testimony regarding Dr. Rontal's failure to advise of risks was disallowed.

the proffered evidence was claimed to be admissible.

## I

Plaintiff first contends that the proffered evidence should have been admitted as evidence that defendant had a routine, habit, or practice of failing to inform patients of risks involved in surgery. MRE 406 provides for the admission of evidence of habit as follows:

"Evidence of the habit of a person or the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

The dispositive question involved is the meaning of "habit", and whether evidence of one prior act of the defendant can properly be considered evidence of the defendant's "habit".

McCormick has defined habit as "one's regular response to a repeated specific situation * * * [one's] regular practice of meeting a particular kind of situation with a specific type of conduct". McCormick, Evidence (2d ed), § 195, p 462.[2] The Michigan cases addressing this issue and admitting evidence of habit, although few in number, have likewise referred to such evidence as establishing a "set pattern", or evidence of something

---

[2] Discussing the prerequisites to the admissibility of habit evidence, Wigmore notes:

"The only conditions (§ 32, *supra*) are (a) that they should be numerous enough to base an inference of systematic conduct, and (b) that they should have occurred under substantially similar circumstances, so as to be naturally suggestive of a system, rather than casual recurrences." 2 Wigmore, Evidence (Chadbourn Rev), § 376, p 385.

that is done "routinely" or "has been performed on countless occasions". *Hoffman v Rengo Oil Co, Inc,* 20 Mich App 575, 576; 174 NW2d 155 (1969), *Mason v Lovins,* 24 Mich App 101, 110; 180 NW2d 73 (1970).

The analysis in the Federal Advisory Committee note which follows FRE 406, which is identical to MRE 406, supports the conclusion that evidence of one prior incident of alleged failure to advise a patient of risks does not establish that defendant has a habit of failing to advise patients of the risks of surgery. Although the committee recognizes that there is an inevitable difference of opinion as to the extent to which instances of conduct must be multiplied and consistency of behavior maintained in order to rise to the status of habit, it also emphasizes that the adequacy of sampling and uniformity of response are key factors. The trial court's ruling that Mrs. Blanchard's testimony was insufficient to establish defendant's "habit" of failing to inform patients of the risks of a stapedectomy was not clearly erroneous.

## II

Plaintiff's next contention is that the proffered evidence was admissible under MRE 404(b) as evidence of defendant's system of failing to inform his patients of the risks attendant to stapedectomies. The trial court ruled that 404(b) was not applicable on the basis that that rule applies "only to criminal matters".

MRE 404(b) provides as follows:

"Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible

for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged."

It should be noted that 404(b) was adopted March 1, 1978, and supersedes the "similar acts" statute.[3] MCL 768.27; MSA 28.1050. See *People v Major*, 407 Mich 394, 397, fn 3; 285 NW2d 660 (1979), *People v Delgado*, 404 Mich 76, 81, fn 3; 273 NW2d 395 (1978). The similar acts statute itself begins with words specifically limiting the application of the provision to criminal cases. It states that evidence which may tend to show a scheme, plan or system in doing an act is admissible where such evidence is material "[i]n any criminal case". Like its statutory counterpart, 404(b), although written somewhat differently than the statute, also suggests that it is limited in its application to criminal cases. Of particular importance are the last four words, "to the crime charged". In addition, the committee notes following 404(b) indicate that the rule is consistent with prior Michigan law, specifically MCL 768.27; MSA 28.1050.

The particular wording of the Michigan rule compels us to conclude that it is applicable only in criminal cases. Had the drafters of 404(b) wanted that rule to apply equally in civil cases they could

[3] MCL 768.27; MSA 28.1050 provides as follows:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

have expressed their intent more clearly. They could have, for example, adopted FRE 404(b) which provides as follows:

"Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible .to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

As can be seen, the Michigan rule is nearly identical to the federal rule except that the Michigan version adds the phrase "when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent *to the crime* charged".

In his treatise on evidence, Wigmore devotes an entire chapter to the topic he entitled "Other Offenses or Similar Acts, as Evidence of Knowledge, Design, or Intent". 2 Wigmore, Evidence (Chadbourn Rev), §§ 300–373, pp 235–381. Although the bulk of that chapter analyzes similar acts evidence in the context of criminal trials, he makes the following comments with respect to the admissibility of similar acts evidence in civil proceedings:

"The foregoing principles are equally as applicable to civil cases as to criminal cases, *i.e.,* to the use of other torts, sales, forgeries, or the like, in evidencing similar issues in civil cases. The peculiarity of the question involved is merely whether and under what conditions other similar acts are receivable to show knowledge, intent, or design as to the act charged.

"This question is of much less frequent occurrence in *civil* cases than in criminal cases, mainly because the issues of intent and the like are less commonly open in civil cases. But wherever knowledge or intent or design

is relevant in a civil case the foregoing principles are equally applicable * * *. The salient feature is the nature of the issue and the kind of evidence offered, not the penal or the civil form of the proceeding." Wigmore, *supra,* § 371, pp 378-379. (Emphasis in original.) (Footnote omitted.)

Many courts from other jurisdictions have agreed with Wigmore. In *Janisse v Winston Investment Co,* 154 Cal App 2d 580, 588; 317 P2d 48, 54 (1957), for example, the Court held that:

"It is well settled that evidence of other transactions to show motive, intent, knowledge, plan, and absence of mistake, in both civil and criminal cases, is admissible."

See also *Moe v Transamerica Title Ins Co,* 21 Cal App 3d 289; 98 Cal Rptr 547 (1971). The California rule of evidence governing the admission of similar acts evidence is significantly different from Michigan's rule, however.[4] The California rule does not by its terms limit its application to criminal cases. We conclude, therefore, that the trial court did not clearly err in ruling Mrs. Blanchard's testimony inadmissible under 404(b).[5]

---

[4] The California rule of evidence governing the admission of similar crimes, wrongs or acts reads in pertinent part as follows:

"(a) * * * evidence of a person's character or a trait of his character (* * * in the form of * * * specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts." Cal Evidence Code, § 1101 (1966).

[5] The author wishes to acknowledge her former position in *Scott v Hurd-Corrigan Moving & Storage Co,* 103 Mich App 322; 302 NW2d 867 (1981). In *Scott,* this Court held that MRE 404(b) does not apply solely to criminal cases. Having met this issue again, and for the reasons stated in the opinion, she is now convinced that the better view is that MRE 404(b) does indeed apply only to criminal cases.

III

Plaintiff's final contention is that the trial court erred when it ruled Mrs. Blanchard's testimony was inadmissible as impeachment testimony. The court held that her testimony would go only to a collateral issue and that its probative value would be substantially outweighed by its prejudicial effect.

It is a well-settled rule that a witness may not be impeached by contradiction on matters which are purely collateral. *Shannon v Jamestown Twp,* 251 Mich 597; 232 NW 371 (1930). What is a collateral matter depends upon the issue in the case. *Shannon, supra,* 599, *Hall v Iosco County Board of Road Comm'rs,* 2 Mich App 511, 514; 140 NW2d 761 (1966).

Although often difficult to apply in practice, the collateral matter doctrine applies most often "to limit the way in which a witness may be impeached, on the theory that one cannot introduce extrinsic evidence on collateral questions". Dolan, *Rule 403: The Prejudice Rule in Evidence,* 49 So Cal L Rev 220, 264 (1976). The purpose of the doctrine is closely related to the goals of the prejudice rule, MRE 403, and generally the same factors which are employed to determine whether evidence is inadmissible under 403 are used to determine whether extrinsic evidence should be allowed for impeachment purposes. Therefore, although extrinsic impeachment evidence may have some probative value, the judge must weigh this benefit against countervailing factors such as whether admission will result in or cause undue prejudice, confusion, surprise and the like, and whether admission will unduly lengthen the trial.

In the instant case, the trial court concluded

that the issue of what defendant did or did not tell Mrs. Blanchard was collateral to the issue in the case at bar. We agree. While the proffered testimony would have tended to discredit defendant's testimony that he advised plaintiff of surgery risks, the testimony was still evidence of a collateral matter and thus inadmissible. The question in this case was not whether defendant always acted in accordance with the standard of his profession, or whether he so acted with regard to Mrs. Blanchard. Rather, it was whether he acted in accordance with that standard in *this* case in his treatment of *this* plaintiff. Defendant's alleged failure to advise a former patient, therefore, was collateral to the issue at bar, and was properly excluded. The trial judge's determination that the proffered testimony would be substantially more prejudicial than probative was not clearly erroneous. Plaintiff was, therefore, bound by the answer given by defendant during cross-examination. *Skiff v Dickens*, 38 Mich App 357, 363; 196 NW2d 481 (1972).

Affirmed.