PRZERADSKI v REXNORD, INCORPORATED

Docket No. 45056. Submitted March 2, 1982, at Detroit.—Decided September 21, 1982. Leave to appeal applied for.

Constance Przeradski was killed when her hair became entangled in the mechanism of a cement mixer. Her husband, Robert Przeradski, as administrator of her estate, brought a wrongful death action against Rexnord, Incorporated, the manufacturer of the mixer, alleging that Rexnord breached express and implied warranties, manufactured an inherently dangerous product, and was grossly negligent. The Oakland Circuit Court, Robert B. Webster, J., entered a judgment on a jury verdict of no cause of action and denied the plaintiff's motion for a new trial. Plaintiff appeals by leave granted, alleging several errors. *Held:*

1. The trial court did not err by excluding extrajudicial statements made by employees of a retail store which sold defendant's products where no agency relationship between the defendant and the store was shown.

2. A guard which was later placed over the mechanism was properly excluded from evidence. Subsequent remedial measures are inadmissible to prove negligence at the time of the occurrence in question.

3. Evidence that the defendant had not received notice of

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur 2d, Agency §§ 351-353, 355.

[2] 29 Am Jur 2d, Evidence §§ 275, 628.
Admissibility of evidence of repairs, change of conditions, or precautions taken after accident. 64 ALR2d 1296.

[3] 5 Am Jur 2d, Appeal and Error § 881.

[4] 29 Am Jur 2d, Evidence §§ 251-253.

[5] 29 Am Jur 2d, Evidence §§ 818, 820, 824.

[6] 63 Am Jur 2d, Products Liability §§ 61-66, 71, 73.
Manufacturer's or seller's duty as to product design as affecting his liability for product-caused injury. 76 ALR2d 91.
Admissibility in evidence, on issue of negligence, of codes or standards of safety issued or sponsored by governmental body or by voluntary association. 75 ALR2d 778.

[7] 63 Am Jur 2d, Products Liability §§ 129-133.
Strict liability in tort for product defects. 13 ALR3d 1057.

other injury claims involving the model of cement mixer involved was relevant, and therefore admissible, in that such evidence may have had a tendency to make the existence of a design defect less probable than it would be without the evidence.

4. The results of a test performed on a similar mechanism were properly admitted where the results rebutted plaintiff's claim that the mechanism was fragile and inherently dangerous.

5. The trial court properly directed a verdict on the gross negligence count since the evidence was insufficient to warrant submission of that claim to the jury.

6. The trial court properly instructed the jury that negligent design could be found if the design was not in conformity with industry standards or design guidelines established by an authoritative voluntary association or if the design choice carried a latent risk of injury and the manufacturer failed to communicate the nature of the risk to the users of the product.

7. The trial court properly instructed the jury on contributory, rather than comparative, negligence.

8. Plaintiff was not denied a fair trial by the alleged intentional misconduct of defense counsel.

Affirmed.

R. M. MAHER, P.J., dissented. He would hold that admission of the test results was error because the conditions under which the test was conducted were not sufficiently similar to those of the actual occurrence. He would also hold that the trial court's instructions on negligent design were erroneous, because the proper standard for determining whether a manufacturer was negligent is whether the manufacturer failed to protect against a risk that is unreasonable and foreseeable by the manufacturer. Judge MAHER would also hold that plaintiff was denied a fair trial by the conduct of defense counsel. He would reverse and remand for a new trial.

### OPINION OF THE COURT

1. AGENCY — EVIDENCE — AUTHORITY OF AGENT.

There must be some evidence of an agency relationship before an agent's declaration may be received as evidence against the principal; furthermore, the apparent authority of an agent to speak on behalf of a principal may not be established by the acts and conduct of the agent alone.

2. NEGLIGENCE — EVIDENCE — REMEDIAL MEASURES.

Evidence of remedial measures taken after the occurrence of an

event is not admissible to prove negligence in connection with the event (MRE 407).

3. EVIDENCE — ADMISSIBILITY OF EVIDENCE.

A trial court's decision regarding the admissibility of evidence will not be overturned on appeal unless it is clearly erroneous.

4. EVIDENCE — RELEVANT EVIDENCE.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence (MRE 401).

5. EVIDENCE — EXPERIMENTAL TEST RESULTS.

The decision to admit experimental test results rests within the sound discretion of the trial court; however, in order for results of out-of-court experiments to be admissible the conditions of the experiment must be sufficiently similar to those involved in the case which is the subject of litigation, with any minor deviation of the conditions going to the weight of the evidence rather than its admissibility.

6. PRODUCTS LIABILITY — DESIGN DEFECTS — BREACH OF DUTY.

A plaintiff seeking to establish a question of fact as to a manufacturer's breach of duty in a design defect products liability action must present evidence that: (1) the particular design was not in conformity with industry design standards, design guidelines established by an authoritative voluntary association, or design criteria set by legislative or other governmental regulation; or (2) the design choice of the manufacturer carries with it a latent risk of injury and the manufacturer has not adequately communicated the nature of that risk to potential users of the product.

DISSENT BY R. M. MAHER, P.J.

7. PRODUCTS LIABILITY — MANUFACTURER'S LIABILITY.

*The test for a manufacturer's liability in a products liability case is whether the manufacturer has failed to protect against a risk that is unreasonable and foreseeable by the manufacturer.*   .

*Law Offices of Leonard C. Jaques, P.C.* (by *Leonard C. Jaques),* and *Gromek, Bendure & Thomas* (by *Mark R. Bendure),* of counsel, for plaintiff.

*Harvey, Kruse, Westen & Milan* (by *John F. Milan* and *Paul S. Koczkur),* for defendant.

Before: R. M. MAHER, P.J., and BEASLEY and P. J. MARUTIAK,* JJ.

BEASLEY, J. On October 19, 1978, an Oakland County jury found no cause of action in favor of defendant on plaintiff's complaint for damages in a wrongful death action based on products liability. From a judgment entered on the verdict and the trial court's denial of his motion for a new trial, plaintiff, Robert Przeradski, files application for delayed appeal, which has been granted.

In this wrongful death action, which was filed on November 27, 1974, by plaintiff, as administrator of the estate of his wife, Connie Przeradski, he alleged that defendant, Rexnord, Inc., the manufacturer of a model 6S cement mixer, breached express and implied warranties regarding the product, manufactured an inherently dangerous product, and was grossly negligent.

The record discloses that on October 20, 1972, plaintiff and his wife were remodeling their home. While cleaning a Rexnord cement mixer, which was manufactured in the late 1940's or early 1950's, the decedent fell and her waist-length hair became entangled in one of the moving parts of the apparatus, a part referred to at trial variously as a hoist, winch, pulley, cathead, winch-head, niggerhead, and power take-off. She was unable to disengage the machine and plaintiff, who was about 75 to 100 feet away, was unable to turn off the cement mixer in time to save her life.

On appeal, plaintiff raises numerous issues. First, he maintains that the trial court erred by

* Circuit judge, sitting on the Court of Appeals by assignment.

excluding from evidence extrajudicial statements made by employees of a retail store which carried defendant's products. On direct examination, plaintiff attempted to testify as to the employees' statements in order to display the unavailability of an owner's manual for the cement mixer. Plaintiff sought to introduce this evidence to establish that defendant was negligent in not providing adequate warnings.

In ruling the employees' hearsay declarations inadmissible, the trial court held that plaintiff had not established an agency relationship between defendant and the retail outlet and, thus, the statements concerning the unavailability of an owner's manual were not admissions by a party opponent pursuant to MRE 801(d)(2)(D).

Before an agent's declaration may be received as evidence against the principal, there must be some evidence of an agency relationship.[1] The apparent authority of an agent to speak on behalf of a principal may not be established by the acts and conduct of the agent alone.[2] We conclude that the trial court did not err in excluding the hearsay statements from admission into evidence.

Secondly, plaintiff claims the trial court erred by prohibiting the introduction of evidence regarding the placement of a protective guard on the cement mixer by someone other than defendant. At trial, plaintiff's expert witness, Harold Joseph, testified that he would have placed a protective guard over the winch-head. Subsequent to Joseph's testimony, plaintiff sought to introduce a guard which had

---

[1] *United States v Pacelli*, 491 F2d 1108, 1117 (CA 2, 1974), *cert den* 419 US 826; 95 S Ct 43; 42 L Ed 2d 49 (1974); 4 Wigmore, Evidence, § 1078 (Chadbourn rev, 1972).

[2] *LaPointe v Chevrette*, 264 Mich 482, 493; 250 NW 272 (1933); McCormick, Evidence (2d ed), § 267, p 642.

been constructed and installed over the winch-head after the accident.

Defendant objected to the evidence on the basis of MRE 407, which renders subsequent remedial measures inadmissible to prove negligence in connection with the incident. In response to the objection, plaintiff stated the evidence was offered to establish the feasibility of installing a safety device. In barring the introduction of the evidence, the trial court relied on *Denolf v Frank L Jursik Co.*[3]

An appellate court will not overturn a trial court's decision relating to the admissibility of evidence unless it is clearly erroneous.[4] Inasmuch as MRE 407 is applicable to both negligence and products liability actions,[5] we do not find that the trial court erred in excluding the proffered evidence.

Plaintiff also assigns as error the trial court's admission of evidence that defendant had not received notice of other injury claims involving defendant's model 6S cement mixer. Our examination of the record reveals that the trial court only permitted plaintiff to inquire as to the history of the particular cement mixer owned by plaintiff. Defendant's expert witness, Harold Thayer, and the previous owner, Gerald Rattee, testified that there were not any problems with the machine prior to plaintiff's ownership.

Relevant evidence is defined in MRE 401:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of

---

[3] 395 Mich 661; 238 NW2d 1 (1976).

[4] *Cook v Rontal,* 109 Mich App 220, 223; 311 NW2d 333 (1981).

[5] *Phillips v J L Hudson Co,* 79 Mich App 425, 426-427; 263 NW2d 3 (1977); *Smith v E R Squibb & Sons, Inc,* 405 Mich 79, 92; 273 NW2d 476 (1979).

consequence to the determination of the action more probable or less probable than it would be without the evidence."

The admissibility of the claim-free history of plaintiff's model 6S cement mixer may have had a tendency to make the existence of a design defect less probable than it would be without such evidence. Since the evidence of claim-free history related to a relevant time period, the trial court did not err in allowing the testimony.[6]

Plaintiff also attacks the admissibility of test results performed by defendant's expert witness. The tests involved the striking of a model 6S cement mixer's winch-head with a hammer. The experimental data was relevant to the lawsuit because it rebutted plaintiff's claim that since the winch-head was fragile and inherently dangerous, it should have been guarded by a safety device.

In order for results obtained in out-of-court experiments to be admissible in evidence, the conditions of the experiment must be sufficiently similar to those involved in the particular case.[7] The decision to admit experimental test results rests within the trial court's sound discretion.[8]

In allowing the introduction of the experimental data over plaintiff's objection, the trial court did not abuse its discretion. Both the winch-head involved in the accident and the one used in the experiment were of the same shape, dimensions, and material. The evidence was relevant to demonstrate the non-fragility of the winch-head. Any

---

[6] See e.g., *Savage v Peterson Distributing Co, Inc,* 379 Mich 197; 150 NW2d 804 (1967); *Grubaugh v City of St Johns,* 82 Mich App 282; 266 NW2d 791 (1978).

[7] *Smith v Grange Mutual Fire Ins Co of Michigan,* 234 Mich 119; 208 NW 145 (1926); *Muniga v General Motors Corp,* 102 Mich App 755, 759; 302 NW2d 565 (1980).

[8] *Keefer v C R Bard, Inc,* 110 Mich App 563; 313 NW2d 151 (1981).

minor deviations of the model winch-head from the unit belonging to plaintiff's cement mixer go to the weight rather than the admissibility of the evidence.[9]

Plaintiff contends that the trial court erred in directing a verdict on the gross negligence count at the completion of proofs and before instructing the jury. In this case, plaintiff did not claim in the trial court that defendant was guilty of wanton and wilful misconduct. In fact, plaintiff alleged gross negligence only in his opening statement, making no mention of gross negligence in his closing argument.

In *Nationwide Mutual Fire Ins Co v Detroit Edison Co,*[10] we said:

"* * * at common law the terms gross negligence and wilful and wanton misconduct are distinct concepts. * * *

* * *

"To the extent that the term gross negligence does survive, however, it is often described as a 'failure to exercise even that care which a careless person would use'. Prosser [Torts (4th ed), § 34], *supra,* 183.

"In the instant case, we believe that by the term 'gross neglect', the parties intended some form of negligence greater than ordinary negligence, but less than conduct bordering on deliberateness. Therefore, we conclude that for purposes of this lease, when the parties employed the term 'gross neglect', they meant that defendant would be liable for failure to exercise the degree of care that even a careless individual would employ under the circumstances."

Viewing the proofs in a light most favorable to plaintiff, we do not find sufficient evidence to

---

[9] *Smith, supra,* 126.

[10] 95 Mich App 62, 65, 67; 289 NW2d 879 (1980), *lv den* 409 Mich 854 (1980).

warrant submission to the jury of the gross negligence claim. The proofs were devoid of evidence to support the claim and, as indicated, in his closing argument plaintiff's counsel did not even refer to any allegations of gross negligence.

Plaintiff also asserts the trial court erred reversibly in its negligent design instruction, in which the following charge was given:

"When I use the word, negligence, with respect to the defendant's conduct, you will find that I will be referring to negligent design. And in that respect I mean, one, that the design claimed to be negligent was not in conformity with industry design standards or design guidelines established by an authoritative voluntary association; or two, the design choice of the manufacturer carries with it a latent or hidden risk of injury, and the manufacturer has not adequately communicated the nature of that risk to potential users of the product. It is for you to decide whether the design of the machine in this case was negligent under such circumstances. But, that is the definition of the term, negligent design, that I will be using subsequently."

Plaintiff claims the appropriate test of liability is whether the design of the product created an unreasonable risk of foreseeable harm, and that the presence of industry standards should not be the determinative factor in evaluating a product design, but rather the standards should only be evidence for the jury to consider.

In *Silisky v Midland-Ross Corp*,[11] we approved the test concerning a manufacturer's liability for an allegedly negligent product design as set forth in *Owens v Allis-Chalmers Corp*:[12]

---

[11] 97 Mich App 470, 478; 296 NW2d 576 (1980), *lv held in abeyance* 410 Mich 866 (1980).

[12] 83 Mich App 74, 81; 268 NW2d 291 (1978), *lv gtd* 405 Mich 827 (1979).

" 'Consequently, we conclude that for a plaintiff to establish a question of fact as to a manufacturer's breach of duty in design defect products liability litigation, evidence of the following must be presented:

" '(1) That the particular design was not in conformity with industry design standards, design guidelines established by an authoritative voluntary association, *or* design criteria set by legislative or other governmental regulation; *or*

" '(2) That the design choice of the manufacturer carries with it a *latent* risk of injury *and* the manufacturer has *not* adequately communicated the nature of that risk to potential users of the product.' "

Accordingly, the trial court did not err in its negligent design instructions.

Plaintiff maintains that the trial court erred in charging the jury on the defense of contributory negligence, rather than comparative negligence. In *Placek v Sterling Heights*,[13] the Supreme Court enunciated the following rule in reference to the retroactivity of the comparative negligence doctrine:

"Therefore, we hold the rule announced today applicable to the instant case and all appropriate cases in which trial commences after the date of this opinion including those in which a retrial is to occur because of remand on any other issue. Further, we find comparative negligence applicable to any case presently pending on appeal in which application of the doctrine was requested at the trial court and the issue preserved for appeal. Finally, comparative negligence shall be the applicable rule in any case commenced but not submitted to the trier of fact prior to the date of this decision, but in no case shall it apply unless there is an appropriate request by counsel prior to submission to the trier of fact."

---

[13] 405 Mich 638, 667-668; 275 NW2d 511 (1979), *reh den* 406 Mich 1119 (1979).

Prior to *Placek,* contributory negligence was a complete defense to a products liability action grounded in negligence.[14]

In the matter at bar, trial was commenced on September 26, 1978, four months prior to the effective date set forth in *Placek.* Additionally, plaintiff did not raise the issue of comparative negligence until his new trial motion of February 14, 1979. Thus, this issue is not properly preserved for appeal.

We note the trial judge appropriately instructed the jury that contributory negligence was not a defense to the implied warranty count.

Lastly, plaintiff claims he was denied a fair trial as a consequence of the allegedly intentional misconduct of defense counsel. In viewing the conduct of the trial in its entirety, we cannot say that prejudicial error resulted from defense counsel's conduct. This was a hotly contested trial, lasting three weeks, where volumes of testimony were presented. In addition, there were myriad objections and lengthy arguments on legal rulings. In examining the record on the whole, we conclude that the trial judge admirably presided with patience and wisdom over the proceedings to the end that both parties received a fair trial.

Affirmed.

P. J. Marutiak, J., concurred.

R. M. Maher, P.J. *(dissenting).* I respectfully dissent.

I am convinced that the trial court abused its discretion by admitting evidence of defendant's

[14] *Casey v Gifford Wood Co,* 61 Mich App 208, 218; 232 NW2d 360 (1975); *Baker v Rosemurgy,* 4 Mich App 195, 200; 144 NW2d 660 (1966).

tests on "similar" winch-heads. I cannot agree with the majority that the circumstances under which defendant's experiments were conducted were substantially or sufficiently similar to those of the actual occurrence. I find particularly significant (1) the wide discrepancy in age between the actual winch-head and the experimental models, and (2) the conditions to which the winch-heads were subjected, *i.e.,* approximately 22 years in the outdoors versus 3 to 12 years in a storeroom. Since weathering and rusting could well have weakened the metal, these differences cannot be fairly characterized as minor variations going merely to the weight of the evidence. Consequently, it is clear that the trial court committed reversible error by admitting evidence of defendant's tests.

I also believe that the trial court's negligent design instruction was erroneous. *Silisky v Midland-Ross Corp,* 97 Mich App 470, 478; 296 NW2d 576 (1980), *lv held in abeyance* 410 Mich 866 (1980), and *Owens v Allis-Chalmers Corp,* 83 Mich App 74, 81; 268 NW2d 291 (1978), *lv gtd* 405 Mich 827 (1979), relied upon by the majority, misstate the law. See, *e.g., Durkee v Cooper of Canada, Ltd,* 99 Mich App 693, 699; 298 NW2d 620 (1980). I expect that eventually both *Owens* and *Silisky* (not to mention this case) will be reversed.

I also believe that defense counsel's conduct exceeded the bounds of fair advocacy and denied plaintiff a fair trial.

I would reverse and remand for a new, and fair, trial.