974 F.2d 1338
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald ELLEDGE; Donald Elledge, Jr. and Ashley Elledge, by
next friend Donald Elledge, Plaintiffs-Appellants,
v.
BACHARACH INSTRUMENT CO., Defendant-Appellee.
Sheryl WOODS, Personal Representative for estate of Leanna
Woods, Plaintiff-Appellant,
v.
BACHARACH INSTRUMENT CO., Defendant-Appellee.
 Nos. 91-1931, 91-1952.
 United States Court of Appeals, Sixth Circuit.
 Aug. 25, 1992.
 
 Before KENNEDY, DAVID A. NELSON and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants--Donald Elledge and his children Donald Jr. and Ashley Elledge and Sheryl Woods, personal representative for the estate of Leanna Woods--appeal several issues in this products liability suit arising out of a jury verdict in favor of defendant, Bacharach Instrument Co. For the reasons set out below, we affirm the district court's rulings.
 
 I.
 
 2
 The facts that give rise to this products liability suit are extremely sad. On October 5, 1987, Donald Elledge and Leanna Woods were assigned by their employer, BASF, to clean chemical residue out of a tank used to manufacture paints. While Woods was cleaning inside the tank, Elledge was outside the tank as the safety person. The tank ignited and then exploded. Woods was killed and Elledge was severely burned while trying to pull Woods from the tank.
 
 
 3
 The fire investigator, Terry Barker, determined that the fire was caused by combustible vapors within the tank. He reported that the fire was caused either by a steel pinching bar striking against another piece of steel or by the separation of a bracing bracket within the tank causing a spark.
 
 
 4
 Before Woods and Elledge entered the tank, the air in the tank was tested with defendant Bacharach's GPK gas detection instrument to determine the presence of combustible vapors. If any amount of combustible vapors registered on the meter, the workers were not to go into the tank. Fred Bryant, BASF's safety coordinator, had trained Catherine Lynem, the new safety director, on operation of Bacharach's meter, including checking the meter against a known gas prior to each use of the meter; checking the air in the tank at different levels and locations; stirring the substances in the tank to assure that trapped vapors were released; and testing the air periodically throughout the cleaning. Lynem tested the tank the week before the accident and on the morning of the accident using the Bacharach meter. During the reading performed the morning of the accident, the meter read zero-zero, indicating no oxygen and no combustibles present. This would signify that either the meter was not functioning or that the tank was unsafe because it lacked oxygen. The parties' stipulations and the evidence presented at trial indicated that Lynem did not calibrate the meter against a known gas that morning; did not stir the substance in the tank; did not test the air at different locations in the tank; and did not re-check the tank after work began.
 
 
 5
 BASF had Catherine Lynem, her husband William Lynem and Gary Krynock, the divisional safety director, investigate the cause of the fire. The morning after the accident, they tested the tank using the Bacharach meter against another meter. William Lynem testified that the other meter obtained readings, while the Bacharach instrument did not.
 
 
 6
 On June 23, 1989, Oscar Singleton, a product application specialist for Bacharach, conducted an inspection of the gas meter that BASF had used. He determined that the tubes inside the meter were crossed. Plaintiff Elledge contends that the tubes were crossed by defendant when the meter was sent back to Bacharach for maintenance. Elledge argues that a sticker on the meter stating "calibrated by JC, date 4-87" indicates that Bacharach's John Conroy had calibrated the meter five months before the accident. Defendant Bacharach claims that the tubes were crossed by BASF employees while changing parts or that BASF employees tampered with the meter after the accident.
 
 
 7
 Plaintiff Donald Elledge and his children filed this diversity action against Bacharach Instrument Co., alleging negligent design, breach of duty to warn, negligent maintenance, and breach of express and implied warranties. The case was consolidated with a diversity action filed by Sheryl Woods as personal representative for the estate of her mother, Leanna Woods. The trial court directed a verdict for Bacharach on plaintiff Elledge's negligent maintenance claim and refused to instruct the jury on the breach of express warranty claim. The case went to the jury on the claims of negligent design of the meter and manual, and breach of the duty to warn. At trial, plaintiffs' experts testified that defendant should have implemented product design changes and put a label or checklist of instructions on the meter itself. Defendant's experts testified that the product design changes also would be hazardous and that checklists were ineffective. The jury returned a verdict in favor of defendant, finding no negligence on its part. Plaintiffs filed a motion for JNOV or a new trial, which the trial court denied on July 11, 1991. The plaintiffs now appeal.
 
 II.
 
 8
 Plaintiffs first argue that the trial court erred in admitting evidence of an absence of prior accidents with this particular meter manufactured by Bacharach. Before trial, the court granted plaintiffs' motion in limine precluding defendant from introducing evidence, for the purpose of proving the absence of fault, that defendant's instruments had no previous history of accidents. It based its ruling on Kurczewski v. Michigan State Highway Comm'n., 112 Mich.App. 544, 316 N.W.2d 484, 487 (1982), and Grubaugh v. City of St. Johns, 82 Mich.App. 282, 266 N.W.2d 791, 794 (1978), which held that evidence of the absence of accidents could not be used to prove an absence of negligence. At trial, however, the court admitted this evidence after finding that counsel for Woods had opened the door to this evidence by eliciting testimony on cross-examination about the absence of a label or instructions on the face of the meter.
 
 
 9
 We affirm the ruling of the district court, but on other grounds. Although we believe that the trial court erred in applying the "opening the door" doctrine, the error was harmless because the evidence was admissible even without application of the doctrine. Fed.R.Civ.P. 61.
 
 
 10
 Because this case is premised on diversity jurisdiction, Michigan law governs substantive matters, while federal law governs procedural issues. FL Aerospace v. Aetna Cas. & Sur. Co., 897 F.2d 214, 217 (6th Cir.), cert. denied, 111 S.Ct. 284 (1990). In a diversity action, the Federal Rules of Evidence govern the admissibility of evidence when these rules cover the disputed issues. Bryan v. Emerson Elec. Co. Inc., 856 F.2d 192 (6th Cir.1988) (unpublished per curiam) (text in Westlaw); Hanna v. Plumer, 380 U.S. 460, 464-74, 85 S.Ct. 1136, 1140-45 (1965). Here, however, the Federal Rules do not directly address negative evidence of accidents.
 
 
 11
 Under the rule of curative admissibility or the "opening the door" doctrine, the introduction of inadmissible evidence by one party opens the door for an opponent to introduce evidence on the same issue to rebut any false impression that was given. United States v. Whitworth, 856 F.2d 1268, 1285 (9th Cir.1988), cert. denied, 489 U.S. 1084, 109 S.Ct. 1541 (1989); McCormick on Evidence, § 57, at 146-49 ("[O]ne who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening."). The doctrine does not permit the introduction of evidence that relates to a different issue or is irrelevant to the evidence previously admitted. Whitworth, 856 F.2d at 1285. This Court has stated that the doctrine " 'is one dangerously prone to overuse.' " United States v. Winston, 447 F.2d 1236, 1240 (6th Cir.1971) (citing Crawford v. United States, 198 F.2d 976, 979 (D.C.Cir.1952)). "Introduction of otherwise inadmissible evidence under shield of this doctrine is permitted 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.' " Id. (citing California Ins. Co. v. Allen, 235 F.2d 178, 180 (5th Cir.1956)).
 
 
 12
 The doctrine of curative admissibility (or the "opening the door" doctrine) did not apply in this situation because plaintiffs did not introduce evidence that was inadmissible or irrelevant. Plaintiffs' counsel merely asked why defendant had not met the 1972 industry standards developed by Factory Mutual and why it did not provide warning labels on the meter. Therefore, there was no door opened through which defendant could enter to introduce the evidence about the absence of prior accidents.
 
 
 13
 We find, then, that if there was error, it arose because the district court should have denied from the outset plaintiffs' motion in limine and admitted the evidence of an absence of prior accidents for the purposes for which defendant introduced it--to show defendant's lack of knowledge of any defect and lack of notice of the need for labelling. That error was harmless because the trial court ultimately admitted the evidence anyway, although for the wrong reason. Federal decisions dealing with evidence or lack of evidence of past accidents are "in a state of hopeless disorder" because the negative evidence is offered for so many different purposes. Koloda v. General Motors Parts Div., 716 F.2d 373, 375 (6th Cir.1983). Michigan law is similarly confusing. The two Michigan cases cited by the trial court, although not products liability cases, clearly indicate that evidence of the absence of prior accidents is not admissible to prove the absence of negligence. Kurczewski, 112 Mich.App. at 544, 316 N.W.2d at 487, and Grubaugh, 82 Mich.App. at 282, 266 N.W.2d at 794. In contrast, other Michigan cases involving products liability hold that negative evidence is admissible. Savage v. Peterson Dist. Co., 379 Mich. 197, 150 N.W.2d 804, 809 (1967) (exclusion of testimony on lack of complaints about mink food prejudicial); Przeradski v. Rexnord, Inc., 119 Mich.App. 500, 326 N.W.2d 541, 544 (1982) (claim-free history of cement mixer admissible because it tended to make existence of design defect less probable), remanded on other gds., 417 Mich. 1100, 338 N.W.2d 188 (1983); Belfry v. Anthony Pools, Inc., 80 Mich.App. 118, 262 N.W.2d 909, 912 (1977) (safe history is admissible to show no design defect in pool). Therefore, the rule in Michigan, at least in products liability cases, is to admit this evidence. In addition, the modern trend, and the rule stated by this Circuit, is to admit this evidence in situations in which positive evidence of accidents would be admissible. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1152-53 (6th Cir.1988) (lack of prior claims admissible to show lack of defective design and lack of notice); Minichello v. U.S. Indus., Inc., 756 F.2d 26, 31 (6th Cir.1985) (no abuse of discretion in allowing evidence of absence of prior accidents with bolster plates); Koloda, 716 F.2d at 375-77 (negative evidence admissible to show lack of notice). Therefore, the negative evidence was admissible at least to show that the company lacked notice as to any defect and to show why it did not label the meter. Thus, the district court committed no reversible error.
 
 III.
 
 14
 The plaintiffs claim that defendant breached an express warranty created by the language "FM approved" appearing in the meter's literature, standing for industry approval by Factory Mutual. They allege that Bacharach breached this warranty because the meter, designed in 1970 and manufactured in 1977, did not meet the 1972 FM labelling standards, although it did meet the 1970 standards. All of the plaintiffs argue that the trial court erred in failing to instruct the jury on the breach of express warranty claim, in failing to direct a verdict for them on that claim, and in denying their motion for JNOV on that claim. Although the district court did not state on the record its specific grounds for refusing to instruct the jury, the court stated orally, in ruling on the other motions, "I determined that no express warranty was made regarding compliance with 1972 Factory Mutual Standards." We hold that the trial court did not err in any of these rulings because there was not sufficient evidence to support an express warranty claim.
 
 
 15
 We first address the trial court's refusal to instruct the jury on the express warranty claim. In diversity actions, state law controls the substantive content of jury instructions, but federal law governs the standard of review for the claimed error in the jury instructions. Bagherzadeh v. Roeser, 825 F.2d 1000, 1003 (6th Cir.1987). Under federal law, it is error for a court to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue. Jones v. Consolidated Rail Corp., 800 F.2d 590, 592 (6th Cir.1986). A trial court should reject a requested instruction which, if given, would require jurors to engage in speculation on a subject on which they have insufficient evidence. Bowman v. Koch Transfer Co., 862 F.2d 1257, 1263 (6th Cir.1988).
 
 
 16
 Michigan's statute addressing express warranties states:
 
 
 17
 (1) Express warranties by the seller are created as follows:
 
 
 18
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis for the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
 
 
 19
 (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
 
 
 20
 Mich.L.Ann. § 19.2313; MCL § 440.2313. Literature can create an express warranty. Soderberg v. DB & T Co., 126 Mich.App. 474, 337 N.W.2d 364, 368 (1983) (express warranty created by ad); Fargo Mach. & Tool Co. v. Kearney & Trecker Corp., 428 F.Supp. 364, 370-71 (E.D.Mich.1977) (literature can be part of basis of bargain). Here, the language "FM approved" in defendant's literature was an affirmation or promise from which Bacharach benefitted. However, although the statute's commentary indicates that "particular reliance on such statements" is not needed,[1] the statute itself requires that any affirmations must be "part of the basis of the bargain." Mich.L.Ann. § 19.2313; MCL § 440.2313. Here, there was no evidence presented that either plaintiffs or their employer knew of the affirmation. Therefore, the evidence was not sufficient to demonstrate that the affirmation became part of the basis of the bargain so that an express warranty was created. Furthermore, there was no evidence that this affirmation warranted that Bacharach's meter, designed in 1970, met, or should have met, the 1972 FM standards, or that defendant had a duty to retrofit the meter when it performed service on the meter. Because finding a breach of warranty would have required the jurors to engage in speculation, Bowman, 862 F.2d at 1263, the trial court did not err in refusing to instruct the jury on this issue.
 
 
 21
 As to plaintiffs' motions for directed verdict and judgment notwithstanding the verdict on the express warranty claim, this Circuit follows the minority view that these motions are governed by state law in federal diversity cases. J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1482 (6th Cir.1991). In Michigan, a JNOV is appropriate "only if the evidence is insufficient as a matter of law to support a judgment for the nonmoving party." Id. (quoting Slanga v. Detroit, 152 Mich.App. 220, 224, 393 N.W.2d 487, 488 (1986), remanded, 429 Mich. 893, 417 N.W.2d 479 (1988)). For the reasons discussed above, the evidence here was not insufficient to support a verdict for the defendant Bacharach on these claims, and in fact was insufficient to support a verdict for plaintiffs. Therefore, the trial court did not err in denying plaintiffs' motion for JNOV. As to plaintiffs' motion for directed verdict, the standard for reviewing this motion is "whether the facts, taken in the light most favorable to the nonmoving party, present a question upon which reasonable minds could differ. If so, then the motion must be denied." Johnson v. White, 144 Mich.App. 458, 376 N.W.2d 130, 132 (1985), rev'd on other gds., 430 Mich. 47, 420 N.W.2d 87 (1988). The trial court did did not err in denying plaintiffs' motions for directed verdict because the facts, viewed in the light most favorable to Bacharach, presented a question on which reasonable minds could differ.
 
 IV.
 
 22
 Plaintiffs also argue that they are entitled to a new trial. A trial court's disposition of a new trial motion is within the discretion of the trial court, and will not be reversed except on a showing of abuse of discretion. Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989). A judge must set aside the verdict and grant a new trial if he believes that the verdict is against the great weight of the evidence. Bruner v. Dunaway, 684 F.2d 422, 425 (6th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 816 (1983).
 
 
 23
 In their motions for a new trial, plaintiffs argued that the court should have instructed on the express warranty claim, that the court should not have admitted evidence of a lack of prior accidents, and that the jury verdict was against the great weight of the evidence. As indicated in the discussion above, the trial court did not err in denying the motion for a new trial as to the express warranty claim or as to the evidence of the absence of prior accidents. As to the argument that the verdict was against the great weight of the evidence, there was sufficient evidence from which a jury could conclude that defendant was not negligent in designing the meter or its instructions and that it did not breach its duty to warn. A witness testified that the employer did not use correct procedures in using the meter; several witnesses testified that employees could have crossed the tubes inside the meter while changing the oxygen cell or the battery, or to cover up the employer's negligence; and an expert testified that the manual was not defective and that labelling on the meter could have been misleading to users. This is sufficient evidence from which a jury could find that defendant was not negligent.
 
 V.
 
 24
 Plaintiff Elledge, but not plaintiff Woods, argues that the trial court erred in directing a verdict in favor of defendant on the negligent maintenance or repair claim. Elledge contends that a sticker on the meter indicating that the meter had been last calibrated in April 1987 by "JC" tends to show that Bacharach's employee, James Conroy, last calibrated the instrument and did so negligently. The trial court directed a verdict for defendant because the evidence showed that defendant serviced the meter in April of 1987, but the meter was properly working in July of 1987, three months prior to the accident.
 
 
 25
 We affirm the district court's granting of a directed verdict for Bacharach as to the negligent maintenance claim. Even if the sticker placed on the meter were sufficient to connect Bacharach with the meter's repair, several witnesses testified that the meter worked after the April 1987 calibration. There was no evidence to show that the repairs were faulty or to refute the evidence that the meter was working after April of 1987. Therefore, there was not sufficient evidence from which a jury could find that defendant negligently maintained the meter, and a directed verdict was appropriate. J.C. Wyckoff & Assoc., 936 F.2d at 1482 (citing Michigan's standard).
 
 VI.
 
 26
 For the reasons set out above, we AFFIRM the district court's rulings admitting evidence of an absence of prior accidents; refusing to instruct the jury on the express warranty claim as well as denying plaintiffs' motions for JNOV and directed verdict as to this claim; denying the motion for a new trial; and directing a verdict as to the negligent maintenance claim.
 
 
 
 [1]
 The commentary to this section states:
 No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice, affirmations of fact made by the seller about the goods during the bargain are regarded as part of the description of those goods; hence, no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.
 Mich.L.Ann. § 19.2313; MCL § 440.2313, commentary note 3.